Rose Levin, Administratrix, appellee, v. City of Omaha, appellant.

Filed March 30, 1918. No. 19789.

1. **Municipal Corporations: Employee.** When a policeman of a metropolitan city is assigned to work outside the duties of a peace officer, but falling within the corporate functions of the municipality, he becomes a servant of the municipality in its corporate capacity.

2. ———: ———: **Negligence: Liability.** A municipal corporation is liable for the negligence of one whom it sends upon an errand in connection with its corporate functions to the same extent as an individual or a private corporation.

3. **Master and Servant: Volunteer Assistant to Employee: Negligence: Liability.** An employer is not liable for the negligent act of a volunteer assistant procured by his employee, unless the latter can be said to have been clothed with authority express or implied to avail himself of such assistance. But such authority may be implied from the nature of the work to be performed, and also from the general course of conducting the business for so long a time that knowledge and consent on the part of the employer may be inferred. It is not necessary that a formal or express employment on behalf of the employer should exist, or that compensation should be paid by or expected from him.

Appeal from the district court for Douglas county: William A. Redick, Judge. *Affirmed.*

*John A. Rine, W. C. Lambert* and *L. J. TePoel,* for appellant.

*Ringer & Bednar* and *Henry Monsky, contra.*

Morrissey, C. J.

Plaintiff recovered a judgment for the death of Isadore Levin caused by the negligence of one Roy Furstenberg in driving an automobile at a reckless rate of speed upon the streets of defendant city. That Furstenberg was negligent is admitted, but defendant denies responsibility for his acts.

At the time of inflicting the injury, Furstenberg was driving an automobile owned by a private party, which had been taken to the city garage by its owner in the expectation of making a sale thereof to the city. Furstenberg appears to have been a friend of the owner of the car and to have hung around the garage for several days. On the day of the accident, and for some time before, one Baughman was foreman of the garage, and Mr. Kugel was a member of the city commission and in charge of the street department. Baughman was carried on the city pay roll as a police officer. The garage of which he was foreman made repairs on the police department's automobiles, and also upon the automobiles in use by the street department of which Mr. Kugel was the head. One Davis, the chauffeur for the street commissioner, drove the commissioner's car to this garage for the purpose of changing an inner tube. The tube he desired to use was at another garage. Furstenberg asked Baughman if he should go after the tube for Davis. Baughman, according to one witness, said, "Yes; go and hurry back." According to another he said, "Yes; go ahead." The record does not disclose whether Baughman directed Furstenberg to take this automobile or not, but Baughman testified: "It is implied around that place if you go out any place you are going to take a car if you can get it." Furstenberg took the car, went after the repair needed for the street commissioner's car, and while on this errand negligently killed plaintiff's intestate.

On behalf of the city it is urged that Furstenberg was not an officer, agent or employee of the city; that Baughman was a police officer; that the garage of which he was foreman was under the police department and maintained principally for looking after cars in use in the police department; that no direction given by Baughman would bind the city; that he was without authority to hire or discharge persons in behalf of the

city, and that there was laid upon him no duty to make repairs on any car not engaged in the police department; that the city would not be liable for the negligence of its police officers, and no liability could attach under any authorization that Baughman might give to Furstenberg.

The evidence discloses that the car of the street department had regularly been repaired at this garage; that, although Baughman was carried on the city's payroll as a policeman, the service he rendered was that of a shop foreman. That he had the right, and that perhaps it was his duty to make the repairs on the street commissioner's car, had long been recognized by the custom of making such repairs. If it were his duty to make the repairs, he surely had the authority to send after the necessary articles, and, if he could direct his helpers to jack up the car and change the tires, he could, no doubt, direct a helper to go to another building and bring the inner tube. In making such repairs and in giving such orders Baughman was acting in behalf of the corporate interests of the city, and not as a police officer. The fact that he was enrolled as a policeman and might have been clothed in a policeman's uniform and given a beat upon the street does not change the character of his employment, when he was in fact doing the work of a shop foreman. The character of the employment will govern, and he must be held to have the power incident to the duties which the city imposed upon him. His work was inconsistent with the duties of a peace officer, but entirely consistent with the duties of an employee engaged by the city in its corporate capacity.

The car which Furstenberg drove, it is true, was not owned by the city, and had been taken to this garage by its owner to be sold to the police department; but it had been stored in this garage as city cars were stored, the oil and gasoline for its use had been fur-

nished by the city, and to some extent it had been used in the city service. It was under the control of the city, was being driven by one authorized by the foreman of the city's garage to drive it, and was on a mission for the street department.

The defendant is not liable for the negligence of its police officers while engaged in the police department, but Baughman had lost the character of a peace officer, and had become the servant of the municipality in its corporate capacity. As foreman of the shops he gave directions to those engaged in the handling of cars and directed the making of repairs. The character of this work was such, under the circumstances, that the employment of assistants on the master's account must necessarily have been contemplated. The authority to send Furstenberg on this errand, if not directly given, was implied, and the negligence of the messenger must be regarded as the negligence of the city. See article by Mechem on "The Liability of a Master to Third Persons for the Negligence of a Stranger Assisting his Servant," in 3 Michigan Law Review, 198; also, 18 R. C. L. 785, sec. 245; and note to *Thyssen v. Davenport Ice & Cold Storage Co.,* 13 L. R. A. n. s. 572 (134 Ia. 749).

The instructions complained of are in line with this view of the law, and the judgment is

AFFIRMED.

SEDGWICK, J., concurring.

The city established an automobile repair shop, and placed it in charge of Mr. Baughman as foreman and manager. He must be presumed to be an expert automobile repairer and fully competent to conduct such a shop and manage such a business. We have generally held that, when a municipal corporation engages in such business, its responsibilities and liabilities are the same as are those of private corporations or individuals in the conduct of such an enterprise. The city sent an

automobile to this shop for repairs, and the foreman found that it was necessary to send for an article to be used in such repair. He did not apply to the mayor and council to send for the article, but himself sent the young man Furstenberg for it. It is said that Furstenberg was "a stranger," and the foreman of the shop was not authorized to send "a stranger." He was 18 years of age and accustomed to driving an automobile, and there could be no objection to him personally as a proper party to perform such a duty for the repair shop. He was a stranger in the sense that he was not a regular employee of the city. It was "implied around that place if you go out any place you are going to take a car if you can get it." They were in the automobile business, and when the foreman found it necessary to have such a service performed without delay, as the evidence shows it was in this case, the mayor and every member of the council must have known (if they knew anything about how their repair shop was conducted) that automobiles were so used. A great deal is said about driving an automobile as "a hazardous occupation," etc. It may be driven in a hazardous way, and evidently was in this case. But, would the city authorities have any right to contend that, if the foreman of their repair shop had immediate need of an article to be used in the general business of the shop, and was sending a young man, two years older than the law names as the age to qualify him to drive an automobile, he should forbid the one so selected to take one of the automobiles that were customarily used upon such errands, on the ground that an automobile is a dangerous thing? The foreman of the repair shop was in charge of that business. He was expressly and necessarily authorized to do those things that were ordinarily and reasonably necessary in carrying on the business. There was no one else to do it. The mayor and council could not do it if they were qualified. The city was running this shop by its foreman, and every act he did in the proper discharge

of his duties in that business was the act of the city. The city, therefore, sent Furstenberg with this automobile to perform this service for the city, and the city is responsible for the manner in which it was performed.

CORNISH, J., dissenting.

Law and common sense generally do and should agree. I do not say the opinion is not common sense, but I do believe that hundreds of business men, farmers, shop-owners, factory-owners, and others will be surprised to learn that their foremen (mere servants), without power to hire men, can engage a stranger at work operating another stranger's automobile through the congested streets of a city, and do it in the master's name so as to make him responsible for the negligence of the stranger so engaged. Operating an automobile is a hazardous occupation and is so recognized in the law.

One can imagine that the law might be that, when one is injured by the negligence of another, and the accident is one which would not have occurred but for the fact that a third party was engaged in a business enterprise, which thus became an incidental cause or occasion of the injury, then the third party should be responsible for the damages sustained. It could be said that the business should bear the loss which it had made possible. But this would be neither good law nor good sense. Such a rule would be destructive of business enterprise. It would make it impossible for a talented young man of limited means to pass from the wage-earning to the proprietor class. One such judgment as in the instant case might exhaust his capital.

The law as it is may, I think, be stated in a sentence. It holds those only liable for negligence who are guilty of it, either by their own act or that of another acting for them. It says to the individual employing men, either as agents or servants: "You must not be negligent in your selection of them, but must have a

care to see that they are safe men for the work they are to do. Having so selected them, you are responsible for their acts done in the course of their employment. Having these liabilities imposed upon you, you are privileged to select your own agents or servants."

The trust committed to an agent is exclusively personal, and cannot be delegated by him. A servant, which term includes foreman, has not the power to make contracts in the name of his master. Neither an agent nor a servant has, ordinarily, the power to employ men.

Applying these general principles of law, Baughman, the foreman, was not empowered in the name of his master to put Furstenberg at work operating the automobile, and the master was not liable for Furstenberg's negligence in operating the car.

But there are certain exceptions, or apparent exceptions, to the general rule above stated. Among these are the following:

(1) The master being liable for his servant's negligence while acting within the scope of his employment, it follows that, if the servant is himself negligent in permitting a stranger to engage in his master's work, then in certain cases the master may be liable for the servant's negligence. This rule has no application to the instant case, because this action is based, not upon the negligence of Baughman, foreman, but upon the negligence of Furstenberg.

(2) Cases have arisen where the servant or agent permitted a stranger to help him in his work, under his control and direction, in which the master has been held liable for the stranger's negligence, on the principle *dominus pro tempore;* the stranger's acts are the servant's acts. In *Slothower v. Clark,* 191 Mo. App. 105, 110, Lord Abinger is quoted as having said in an early case, where the servant permitted another, sitting beside him, to drive the team: "I think that the reins being held by another man makes no difference, it was the same as if the servant had held them himself." The court also said (quoting from *James v. Muehlebach,* 34 Mo.

App. 512) : " But not so if the servant had quit the carriage and substituted the stranger in charge, generally, in his stead, without the knowledge of the master."

(3) Authority of the agent, and sometimes of the servant, to engage others may be implied in certain cases growing out of the exigencies or necessities of the situation, the nature of the authority given, or based upon the custom or usage of trade in similiar cases. An instance arises when in a sudden emergency the agent or servant is unable to consult with his master or principal, and the law implies authority to procure the necessary help.

The majority opinion seems to be based upon implied authority growing out of the nature of the authority given to Baughman, foreman, or possibly based upon implied authority growing out of the custom of trade in similar cases. Baughman as foreman would, I think, have no authority either to employ a man or to delegate his authority to a stranger. This involves a question of fact. The law implies authority only where it is necessary or customary. If a man were needed to go after the tube, that end could be accomplished by telephoning the messenger or express service; or it could be done by dealing with Furstenberg as an independent contractor to procure the tube, and in doing so he would act under his own direction and control, in either of which cases no liability could arise against the city. Assuming, however, that Baughman as foreman of the shop had implied authority to send another after the tube, it by no means follows that he could send him in an automobile, a hazardous occupation. Mechem, in his work on Agency, vol. 1, (2d ed.) sec. 315, in discussing this exception to the general rule, states: "Where in the execution of the authority an act is to be performed which is of a purely mechanical, ministerial or executive nature, involving no elements of judgment, discretion or personal skill, the reason for the general rule does not apply, and the power to entrust the performance of it to a subagent may be

implied." As was held by this court in *Home Fire Ins. Co. v. Garbacz,* 48 Neb. 827: "Authority conferred upon an agent requiring the exercise by him of special skill, judgment, or discretion cannot, in the absence of a known usage, unless justified by the necessities of the case, without the consent of the principal, be delegated to another." Can it be doubted that the operating of an automobile in a crowded street requires the exercise of skill and discretion? In many states individual licenses are required, and the statute of this state recognizes the attending dangers. Is it suggested that, by usage or custom of the trade or business, foremen who need to go by themselves or send others upon errands can and do send them in automobiles. Such custom was neither pleaded nor proved. We all know it does not exist. By custom foremen would no more assume to exercise this power than other servants. There is no more need. The ordinary owner of an automobile would think it absurd that his own servant (not a chauffeur) could, without permission, general or special, use his automobile to go upon a necessary errand. He would think it more absurd that his chauffeur could, without permission, delegate to a stranger the power to use his automobile on such errand. Assuming, as I said, that Baughman, foreman, from the nature of his position and work, had implied authority to send for the tube, his power, both in reason and in law, would be limited to sending one on foot, by street car, or in some manner where extra care and skill would not be required. As long as the law recognizes no principle of vicarious liability, which it does not, only the person who is guilty of negligence should suffer from it. The city of Omaha never authorized Furstenberg to operate the automobile. It never authorized the foreman to delegate to others the power to operate automobiles; and the proposition, if it were advanced, that there is any usage or custom of business in accordance with which foremen are accustomed to assume power to send strangers on errands,

driving an automobile, it seems to me is too absurd for discussion.

Mechem is cited as an authority in the opinion. He is a safe authority. I call attention to the following sections in the recent edition of his work on the Law of Agency, vol. 1, (2d ed.) secs. 305, 306, 313, 315, 335, 336, 988, and vol. 2, sec. 1866. For other authorities, see 2 C. J. p. 689; *Long v. Richmond,* 68 N. Y. App. Div. 466; *Mangan v. Foley,* 33 Mo. App. 250; *James v. Muehlebach,* 34 Mo. App. 512; *Slothower v. Clark, supra; Geiss v. Twin City Taxicab Co.,* 120 Minn. 368; *Gwilliam v. Twist,* 2 Q. B. Div. 1895 (Eng.) 84.

Rose, J., dissenting.

In my judgment the doctrine announced in the majority opinion and in the concurring opinion fastens upon cities a new and indefensible liability for the wrongs of strangers. A person on the city pay roll as a policeman, but in charge of a municipal garage where automobiles are repaired for the police department, permitted a stranger to go to another garage for a rubber tube. The stranger took a powerful automobile belonging to another stranger, and while rushing along a public street negligently killed a man. For the negligence or wrong thus described, the city in this lawsuit was adjudged to pay $8,877. In affirming the judgment, as I view the decision, negligence is traced from the dangerous agency of a stranger's rapidly-moving automobile in a populous city to another stranger, and from the latter through a policeman or foreman of a municipal repair shop to the city itself. I cannot agree with the majority. In my opinion the conclusion has no substantial foundation in fact or law. The private citizens who bear the pecuniary burdens of municipal government ought to find the limits of official power in state statutes, in ordinances enacted pursuant to those statutes, and in contracts or employments authorized by such statutes and ordinances. I do not observe in

102 Neb.—22

the majority opinions, in the record, or in the argu-
ments any reference to a statute, an ordinance, a con-
tract, or an employment conferring upon the police-
man or foreman in charge of the municipal garage au-
thority to send a stranger, in a powerful and danger-
ous automobile belonging to another stranger, through
the streets of a populous city to get a rubber tube.
Municipal power making a city and its inhabitants lia-
ble for the wrongs of strangers should not emanate
from the whim or caprice of a policeman or foreman
of a municipal garage. Following a former opinion hold-
ing in effect that the policeman or foreman cannot be
summarily removed, his implied power to speak for the
city and to make it liable in damages for the wrong-
ful acts of strangers will, in my view of the decision,
add a new and startling chapter to municipal law. Such
power, if granted, ought to come from the legislature.
If the duties of the policeman or foreman in the munic-
ipal repair shop required the use of a rubber tube, his
implied power in that respect went no further than to
get it himself or to employ an available, independent
contractor engaged in furnishing a recognized messen-
ger service—an agency without power to create a munic-
ipal liability for damages. Under existing conditions
the doctrine announced in the majority opinion and in
the concurring opinion should, in my judgment, be re-
jected.