## OKLAHOMA CITY v. HAGGARD.

No. 22261. Feb. 5, 1935.

A. L. McRill, Municipal Counselor, and A. L. Hull, Asst. Municipal Counselor, for plaintiff in error.

Moss & Powell, for defendant in error.

RILEY, J. This is an appeal from a judgment in favor of defendant in error in an action to recover damages for personal injuries.

The principal question involved is as to the capacity in which the defendant city was acting in performing the work out of which the alleged negligence arose, whether in a sovereign governmental capacity, or an individual proprietary capacity.

The plaintiff was injured while driving an automobile north on Indiana avenue in the city of Oklahoma City, by the automobile which she was driving being struck, at the intersection of First street and Indiana avenue, by a police automobile owned by the city being driven by James Morris, a police officer, known as a "plainclothesman" of the city of Oklahoma City, driving east on First street.

The petition alleged negligence on the part of defendant in that said Morris was negligently driving said police car at a high reckless, unreasonable, and unlawful rate of speed, and carelessly, negligently, and unlawfully failed to slacken the speed of said police car, although he saw or might by due diligence and ordinary care have seen, plain-

tiff at, or entering, said intersection in time to have stopped and avoided a collision.

It also alleged that defendant city, as a municipal corporation, owned, operated, controlled, and maintained a number of automobiles, and maintained and operated a repair shop where its automobiles, including the one driven by Morris on the occasion of the injury, were kept, and were to be kept in proper repair by defendant; that a short time before the injury, one Al Large, a police officer of the city, informed defendant through one of its police captains, and the foreman of the repair shop, that the automobile afterwards driven by Morris at the time of the injury was out of repair, and particularly that the brakes of such car were in bad order and would not hold the car, and that same could not be operated with safety until such defects were repaired; that notwithstanding said notice, and without proper repairs being made, defendant through its chief of police ordered and directed and commanded said Morris to take said car from the repair shop, drive and use the same in answer to a call for a policeman in the western part of the city, and that in doing so the injury occurred, and that the defective brakes on said car were the direct and proximate cause of the collision, and of plaintiff's injury.

Defendant answered by general denial, and specifically pleaded that the automobile driven by Morris at the time of the collision was being operated in a governmental capacity for the purposes of governmental functions, to wit, the pursuit of a person charged with a felony.

Plaintiff replied by general denial, and by further allegations to the effect that defendant operated and maintained its garage and repair shop in its corporate or ministerial capacity and not as a governmental function.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiff, and defendant appeals.

The trial court in plain and unmistakable language instructed the jury that the city was not liable for the negligent acts of its policeman in the operation of the car, and submitted the case to the jury solely upon the question of alleged negligence on the part of defendant in failing to exercise reasonable care in furnishing a reasonably safe car for the policeman to operate; and instructed the jury that before the city could be held liable the jury must find from the evidence that the city failed to perform its duty in this respect, and that its failure so to do was the proximate cause of plaintiff's injuries, if any.

Defendant city at all times contended that it was acting in its governmental capacity and performing a governmental function in connection with all matters involved and in all acts alleged in the petition. It raised the question by demurrer to the petition, by objection to the introduction of any evidence thereunder, by demurrer to plaintiff's evidence, by motion for directed verdict at the close of all the evidence, and in the motion for a new trial.

In its brief defendant says that the seriousness of plaintiff's injuries immediately following the accident is not disputed, but that it does take issue on the question of the permanent character of such injuries. In this connection it may be said that there is ample evidence in the record reasonably tending to support plaintiff's claim that her injuries are permanent.

The only other question presented is that of legal liability of the city.

Defendant in its brief and supplemental brief cites many cases which hold a municipality not liable for the torts of its officers or agents in the performance of governmental duty.

Other cases are cited holding that a city is not liable for the negligent acts of a policeman while driving an automobile owned by the city and while engaged in the performance of a governmental duty.

This must be conceded to be the general rule. Plaintiff recognizes this general rule, but insists that the defendant city in the operation and maintenance of the garage and repair shop, and in the work done therein, was acting not in a governmental capacity, but in a proprietary or ministerial capacity, and for negligent acts of its agents, servants, and employees in such matters the city is liable.

The rule is equally well established that a municipal corporation is liable for the negligent acts of its officers, agents, and employees while acting in matters pertaining to the proprietary interests of such municipality or in purely ministerial acts.

In this state, as in most others, the distinction is made between the liability of a municipal corporation for the acts of its officers in the exercise of powers which it possesses for public purposes, which it holds as an agent of the state, and those powers which embrace private or corporate duties

for the advantage of the municipality and its inhabitants.

The distinction seems to be drawn upon the theory that when the acts of its officers come within the powers which it has as agent of the state, it is exempt from liability for its own acts, and the acts of its officers; if the acts of the officer of the city are for the special benefit of the corporation in its private or corporate interest, such officer is deemed the agent or servant of the municipality, and the municipality is generally held liable for the negligence or wrongful acts of such officers in such matters. Silva v. City Council of City of McAlester, 46 Okla. 150, 148 P. 150.

What, then, are the interests being served where a city operates and maintains a garage and repair shop for the maintenance and repair of automobiles owned and operated by the city? This identical question was before this court and decided in Oklahoma City v. Foster, 118 Okla. 120, 247 P. 80. The fifth paragraph of the syllabus so far as applicable to the particular question is:

"Where a city operated a garage or repair shop for the purpose of repairing motor vehicles used in connection with the police department, although it places the same under the control and supervision of the chief of police, it is, nevertheless, in so far as the repair and maintenance of its motor vehicles, acting in its corporate or ministerial capacity. * * *"

In the body of the opinion it is said:

"The establishment by the defendant of a garage for the repair of the city's motor vehicles was in no manner governmental in its character, but was wholly corporate. It was in no manner a police regulation made and enforced in the interests of the public, any more than was the duty to keep a street in condition suitable for ordinary travel, and by placing the chief of police in charge of such repair shop, with power to make, or have made, necessary repairs to motor vehicles, it became his duty to the city, and a duty he owed to those under his orders to see to it that such motor vehicles were at all times in a condition suitable for the services to be performed, and for the negligence of the chief of police in performing this duty, the city will be liable."

A number of cases are therein cited which support the conclusions reached. There the garage and repair shop was in charge of the chief of police. In the instant case it was in charge of the fire department.

Defendant, while in a measure conceding that the above case holds adversely to its contention, contends that the holding therein is fundamentally erroneous, and should be overruled. That if not, it is based upon the doctrine that a master owes the duty to his servants to exercise ordinary care to furnish such servants reasonably safe appliances with which to work, and thereunder the liability should not be extended so as to apply to the injury of one not an employee. The last contention appears to be so clearly without merit as to require no discussion. It is inconceivable that the city owes a greater duty to one of its paid employees than to one in no way connected with the city government. That would be to say that the city might be liable to one of its own employees for the negligence of an officer or agent of the city in the exercise of a ministerial duty, and not liable to one injured by the same character of negligence who is in no way connected with the city and without opportunity to know how the work is done by the city.

We next consider whether the Foster Case, supra, is fundamentally erroneous. If so, it should be overruled. If not, it should be followed.

Now, reverting to the nature of the work or acts out of which the alleged acts of negligence arose, we are to consider whether they were within the powers which the city has as an agent of the state, or were for the special benefit of the corporation in its private or corporate interest.

We can hardly conceive how the state, the public as a whole, could be interested in the question of how, by what means, the city should elect to keep its municipally owned property in repair. The city elected to maintain and operate the garage for the repair of its automobiles, possibly because its managing officers decided that the work could be more efficiently done in such manner; possibly because they decided it could be done more economically in that way. It could in no way be said that the interests of the state were being served by the maintenance and operation of a shop for the repair of the city's automobiles. The public at large could not be said to be the least interested in such matters. It can readily be seen that the corporate or private interests of the municipality might best be served by such an arrangement. The evidence discloses that the garage and repair shop was maintained and operated for the purpose of repairing city owned cars, including the ones the police used. It is conceivable that the city owned and operated automobiles in many of its municipal activities, such as operating its

water supply system, its street repair system, and other activities in no way connected with the police system. Certainly the automobiles used and operated in connection with an enterprise owned and operated by the city in its proprietary capacity, such as a waterworks system, could not be said to be used in connection with the exercise of powers which the city holds as agent of the state. Substantially all the authorities are to the contrary. It may be that the city owns and operates no such enterprise. We are merely stating the proposition as an illustration. It may be that the city maintained no automobiles in connection with its street repair work. But if it did, such automobiles would generally be held to be used in a proprietary or ministerial capacity.

Just why the city operated the garage and repair shop does not appear, but, as stated, it cannot be said that the interests of the state were in any way involved. If not, it must have been maintained for the private or proprietary interests of the city. It could hardly be otherwise. It is apparently upon the theory that the state could have no interest in the question of how or by what means the city kept its automobiles in repair that the decision in the Foster Case, supra, is based. That case is supported by decisions from other states cited therein.

In Levin v. City of Omaha (Neb.) 167 N. W. 214, where the city established an automobile shop and placed it in charge of one who was carried upon the city pay roll as a policeman, and in which repair shop repairs were made on the police department's automobiles and also upon automobiles in use by the street department, it is said in the concurring opinion of Judge Sedgwick that the court had generally held that when a municipal corporation engages in such business, its responsibilities and liabilities are the same as are those of private corporations or individuals in the conduct of such an enterprise.

In New York v. Workman, 67 Fed. 348, it is said:

"The test of corporate liability for the acts of the officers of the municipality depends upon the nature of the duties with which they are charged. If these, being for the general good of the public as individual citizens, are governmental, they act for the state. If they are those which primarily and legitimately devolve upon the municipality itself, they are its agents."

The above was quoted with approval in Fowler v. City of Cleveland (Ohio) 9 A. L. R. 133.

Jones v. Sioux City (Iowa) 170 N. W. 445, is a case wherein it is held that a city is liable for negligence in the operation of an automobile wherein policemen were being hauled to their beats. Therein it was said:

"It seems to us that, in order that the city may escape liability the negligence complained of must bear some just and true relationship to the enforcement of law. If this automobile was being driven rapidly to quell a riot, or to protect the lives or property of citizens, then the speed of the car would bear a true relationship to the enforcement of law. 28 Cyc. 1299.

"If it be conceded, for the sake of argument that the sole mission of the car in question and its driver was to haul policemen to their beats, could it be said that the city was acting in a governmental capacity? We think not. It could not be reasonably said that it is necessary for policemen to be hauled to their beats at the rate of 45 miles an hour through the streets of a city. If it is a part of a city's policy to haul policemen to their beats in the outlying districts of the city, this is something which suits the convenience or economy of the city, and is an act which it does as a part of its general business, and does not relate to the enforcement of law. Such matters partake of the general or corporate business of the city."

In Twist v. City of Rochester, 55 N. Y. S. 850, the city was held liable for negligence in the construction and maintenance of an electric patrol line used in connection with the operation of the police department, and for other purposes. It was in effect held that the construction and operation of the "patrol line" was in the exercise of the corporate power rather than a governmental power.

It may be said that there is conflict of authority on the question of when certain acts pertain to governmental or corporate matters. It is sufficient, we think, to say that from the cases cited, and the reasons given for the holding therein, the case of City of Oklahoma City v. Foster, supra, does not appear to be fundamentally erroneous. On the contrary, it appears to be in entire accord with the modern trend of authority, and the growing tendency to lower the barriers to community liability. Following the rule announced therein, the judgment is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and

BAYLESS, BUSBY, WELCH, PHELPS, CORN, and GIBSON, JJ., concur.