CITY OF HOUSTON V. BIRDIE SHILLING.

No. A-3069. Decided June 13, 1951.
Rehearing overruled July 25, 1951.
(240 S. W., 2d Series, 1010.)

388

*Will Sears,* City Attorney, and *Richard R. Burks,* Assistant City Attorney, both of Houston, for petitioner, City of Houston.

The trial court erred in failing to sustain exceptions to plaintiff's petition because said petition showed upon its face that this suit for tort alleging negligence on the part of the city and its employee in exercising a governmental function, for which negligence the defendant was not liable, and the Court of Civil Appeals erred in not so holding. Said Court of Civil Appeals also erred in holding that the operation of a garage by the city exclusively for the purpose of repairing and maintaining the garbage trucks used by said city was a proprietary function and not a governmental function, as the only purpose in operating said garage was to obey the mandate to collect and dispose of the city's garbage. City of Fort Worth v. George, 108 S.W. 2d 929; Bates v. City of Houston, 189 S.W. 2d 17; Brinker v. First National Bank of Cleveland, 37 S.W. 2d 136.

*Bracewell & Tunks, J. S. Bracewell* and *Joe H. Reynolds,* all of Houston, for respondent, Mrs. Birdie Shilling.

MR. JUSTICE SMITH delivered the opinion of the Court.

Respondent, Mrs. Birdie Shilling, instituted this suit against

the petitioner, City of Houston, to recover damages for personal injuries suffered by her as the result of a collision between a garbage truck owned and operated by the city and an automobile, which she was driving. Trial was to the jury which resulted in a judgment in her favor. This judgment was affirmed by the Court of Civil Appeals at Galveston, 235 S.W. 2d 929.

It being undisputed that the city operated, through its employees, a garage for the repair and maintenance of its trucks used exclusively by the Garbage Department, the jury found that: (1) the city was negligent in the operation of the garage in that, (a) it failed to properly inspect and (b) it failed to adequately repair the brakes of the truck involved in the accident complained of; (2) that such negligence was the proximate cause of the collision and respondent's injuries.

■ Petitioner claims that there is no evidence to support the finding of the jury that the city failed to inspect or properly repair the brakes of the truck immediately prior to the collision. This contention is without merit and can be fully disposed of by quoting from a portion of the testimony of the driver of the truck.

"Q. Just before this accident happened you had had some trouble with that truck?
"A: Yes, sir.
"Q: How long was it before the accident?
"A: The day before.
"Q: The day before?
"A: Yes, sir.
"Q: What sort of trouble did you have with it?
"A: The left-hand brake locking.
"Q: The left-hand brake began to lock?
"A: Yes, sir.
"Q: Did you report that to the garage?
"A: Yes, sir.
"Q: Where were you when you reported it?
"A: It started in town, and I taken it back to the shop and they gave me another truck for the balance of the day.
"Q: What did you tell them?
"A: I told them every time I would touch the brakes, it would turn to my left, and they were supposed to fix it, and the next day it did the same thing.
"Q: It did the same thing when you had this accident?
"A: Yes, sir.

"Q. The same thing it did before you took it to the garage?

"A: Yes, sir.

"Q: How long had you been having that sort of trouble with it?

"A: That was about the fourth time.

"Q: Did you take it to the garage before that?

"A: Yes, sir.

"Q: Did you tell them that the brakes grabbed so it would pull to the left?

"A: Yes, sir.

"Q: How many times did you tell them that?

"A: Four times."

Petitioner's main contention, amply supported by Amici Curiae briefs from other cities throughout the state, is that the operation of the garage was but a necessary element to its garbage collection, which is a governmental function, and being such the city is not liable for the negligence of its employees in the performance of this function. They take the position that this case is entirely ruled by City of Fort Worth v. George, Tex. Civ. App., 108 S.W. 2d 929, error refused, 128 Texas 661. In that case it was held that the city was not liable for the act of its employee in negligently operating a garbage truck while collecting garbage and thereby injuring Mrs. George, since the collection of garbage by a city is a governmental function. The court reasoned that the collection of garbage was in the best interests of the public health and was a duty imposed upon the city by state statute. By refusing writ of error in that case this court has adopted the opinion of the Court of Civil Appeals as its own. While being in complete agreement as to the soundness of the George case, we do not, however, feel that such case is controlling of the case at bar.

■ As stated in City of Amarillo v. Ware, 120 Texas 456, 40 S.W. 2d 57, "the rule is recognized that a municipality is exempt from liability when it performs a duty imposed upon it as the arm or agent of the state in the exercise of a strictly governmental function solely for the public benefit. That the exemption of a governmental agency from liability pertains only to those acts or functions which are performed as the agent of the state in the furtherance of general law for the interest of the public at large, as distinguished from those acts and functions intended primarily for the benefit of those within the corporate limits of a municipality." This rule is well settled. It is in the application of this rule to a particular fact situation that the difficulty arises.

As we understand petitioner's argument, it contends that since it is necessary to the collection of garbage by the use of trucks that the trucks be kept in good repair, it is necessary that the city maintain a repair shop in order that they can fulfill the duty imposed upon them by the state; namely, collect garbage. The city further contends that the maintenance of the repair shop being a necessary element of the governmental function of collecting garbage the city is not liable for the negligence of its employees in performing duties incident to the operation of such shop. This line of reasoning would lead to the conclusion that in any operation necessary to the collection of garbage the city would be immune to liability for the acts of its employees. It could just as easily be contended that since it is necessary that the trucks have gasoline that the city could maintain service stations or oil wells and refineries, and that in these operations the city would be immune to liability. Surely all operations which make it possible for the city to collect garbage are not part of that fucntion in the sense that the city is immune to liability in its performance. A line must be drawn at which point the city ceases to be immune to liability.

This precise question has never been passed on by the Texas courts, but the line has been drawn in cases from other jurisdictions so as to allow recovery for the negligence of a city employee in a repair shop operated by the city for the repair and maintenance of city vehicles. The case most nearly in point is Oklahoma City v. Foster, 118 Okla. 120, 247 Pac. 80, 47 A.L.R. 822. In that case the police department operated a garage to repair and maintain the vehicles used in the police department. The chief of police was in charge of the shop and he sent an employee out on a motorcycle that had defective brakes, and had not been repaired. This employee was injured in an accident caused by the defective brakes, and the court allowed the employee to recover holding that the maintenance of the garage was not a governmental function and therefore the city was liable for its negligence. Other cases to the same effect are Bertiz v. City of Los Angeles, 74 Cal. App. 792, 241 Pac. 921; Levine v. City of Omaha, 102 Neb. 328, 167 N.W. 214; City of Oklahoma City v. Haggard, 170 Okla. 473, 41 Pac. 2d 109; City of Muskogee v. Magee, 177 Okla. 39, 57 Pac. 2d 252.

To hold contrary to these established decisions, as petitioner contends, would be to extend the immunity now allowed cities while they are acting as the agent of the state. This doctrine of immunity has been often criticized and questioned, Workman v. New York, 179 U.S. 552, 574, 21 Sup. Ct. 212, 45 L. Ed.

314; Barker v. City of Santa Fe, 47 N.M. 85, 136 Pac. 2d 480; See Anno. 75 A.L.R. 1196, and the present tendency of the courts is to restrict this doctrine of non-liability and construe it strictly against the city. Barker v. City of Santa Fe, supra; Solomon v. City of New Orleans, 156 La. 629, 101 So. 1; Augustine v. Town of Brant, 249 N.Y. 198, 163 N.E. 732. This was recognized in the George case, supra, when it was stated, quoting from City of Uvalde v. Uvalde Electric & Ice Co., 250 S.W. 140 (Tex. Com. App.) : "Those functions of a municipal corporation in its capacity as an agent of the state are strictly limited by the statutory provisions granting them. In the exercise of these functions the municipality is an arm of sovereignty, and its powers are strictly construed." We see no demand of public policy to depart from this strict limitation on the immunity of municipalities for its torts. See Bertiz v. City of Los Angeles, supra, at 923. The state placed no duty upon the city to repair its garage trucks in its own repair shop. The city is free to use whatever means it shall choose in the collection of garbage and in the repair and maintenance of the vehicles so used. The City of Houston chose to repair the trucks itself for its own benefit and convenience. This saving of time and money could not possibly inure to the benefit of the general public as distinguished from those within its corporate limits.

We hold, therefore, that the maintenance of a garage by the Garbage Department of the City of Houston for the repair of the trucks used in such department is not a governmental function nor a necessary element of a governmental function so as to relieve the city from liability for the negligent acts of those employed in such garage.

The judgment of the trial court and that of the Court of Civil Appeals is affirmed.

Opinion delivered June 13, 1951.

MR. JUSTICE SMEDLEY, joined by Justices Sharp, Garwood and Wilson, dissenting.

I respectfully dissent from the decision of the majority, because it subjects petitioner, the City of Houston, to liability for injuries suffered by respondent as the result of the negligence of an employee of the city while engaged in the performance of a governmental function of the city.

Respondent was injured in a collision between her automobile and a truck owned and operated by the city in the collection

of garbage. This brings the case under City of Fort Worth v. George, 108 S. W. 2d 929. And, as stated in substance in the opinion of the majority, the refusal of the application for writ of error in that case made the decision of the Court of Civil Appeals in effect the decision of this Court. The soundness of the George case has not been questioned by this Court. On the contrary, the decision there made has been repeated in later opinions of this Court and the Courts of Civil Appeals, and recognized as the established law of the State. City of Houston v. Quinones, 142 Texas 282, 286, 177 S. W. 2d 259; Bates v. City of Houston, 189 S. W. 2d 17; City of Wichita Falls v. Kemp Hotel Operating Company, 162 S. W. 2d 150, 154, affirmed in Kemp Hotel Operating Company v. City of Wichita Falls, 141 Texas 90, 170 S. W. 2d 217.

The basis of the decision in the George case, like that in other cases where the function involved pertains to the public health, is that there is no liability on the part of the city because the city is engaged in the performance of a duty delegated to it and imposed upon it by law and to be performed for the benefit of the general public. City of Wichita Falls v. Robinson, 121 Texas 133, 46 S. W. 2d 965; City of Dallas v. Smith, 130 Texas 225, 107 S. W. 2d 872. In this connection attention is called to the fact, as pointed out in the opinion in the George case, that the city in collecting and disposing of garbage is performing duties for the protection of the public health under the Sanitary Code set out in the general laws of this state. See Article 4477 of Vernon's Annotated Civil Statutes and other articles of the statutes cited in the George case. A later Act of the Legislature establishes minimum standards and requirements of sanitation and health protective measures to be complied with *by all governmental units* and expressly includes the disposal of garbage and refuse. Chapter 178, Acts Regular Session, 49th Legislature, page 234.

The opinion of the majority recognizes the rule of the George case as the established law of this State, but departs from the rule, or undertakes to avoid its application to this case, by splitting the city's performance of the function of gathering and disposing of garbage into two parts and holding that in part of the performance the city is acting in a governmental capacity and in the other part of the performance it is acting in a proprietary capacity. This grows out of the two findings of the jury, one that the injuries suffered by respondent were caused by negligent operation of the garage truck by its driver, and the other that the injuries were caused by the

negligent failure on the part of city employees to inspect and repair the brakes on the garbage truck immediately before the collision. The opinion concedes that for the negligent operation of the truck the city is not liable, but holds that the inspection or repairing of the brakes in the garage owned by the city and operated by its Garbage Department in the maintenance of its garage trucks is the exercising of a proprietary function, and that for negligence in the inspection and repairing of the brakes on the truck the city is liable.

The undisputed facts in the record with reference to the garage and its operation are these: The garage building owned by the city, together with the ground connected with it, occupies 277 by 485 feet. It is situated in the city and near one of its main thoroughfares. It has the same type of equipment, tools and appliances as other garages that take care of motor vehicles. It has from twenty to twenty-seven employees, including eleven mechanics, seven helpers and other laborers. The garage is maintained and operated as a part of the Garbage Department of the city. It is operated only for the purpose of maintaining the automotive equipment used in the gathering and disposal of garbage and it does not take care of, repair or maintain any automotive equipment except that which belongs to the Garbage Department of the city. As part of the maintenance the brakes on the garbage trucks are adjusted and repaired. Whenever a garbage truck "goes bad" or "breaks down" it is brought to the garage for repairing and a relief truck is sent from the garage to take its place. The city operates each day fifty-four garbage trucks and has in addition a number of "stand-by" trucks.

It is very apparent from the foregoing undisputed facts that the operation of the garage is a part of the city's gathering and disposal of garbage. It is as certainly a part of the performance of that function as is the driving of the trucks. The garage is used and operated to keep the trucks running and the garbage moving. There is no sound reason for a ruling that the inspection and repairing of the trucks in the garage and the trucks themselves standing in the garage and undergoing repairs before going upon the streets to gather garbage are not means and instrumentalities for and in the performance of the governmental function of gathering garbage, when the same trucks, as soon as they are driven onto the streets and their driving on the streets are such means and instrumentalities. Keeping the trucks in repair is essential to their successful operation. It is for the accomplishment of the same purpose and a part

of the same function, the gathering of the garbage. Had the garage been maintained and used for the repairing of all motor vehicles owned by the city and used for whatever purpose, a somewhat different question would be presented, but this garage is a part of the Garbage Department of the city. It has no other purpose and no other function than to further the gathering and disposal of garbage.

In City of Wichita Falls v. Robison, 121 Texas 133, 46 S. W. 2d 965, the plaintiff, an employee of the sanitary department of the city, suffered injury to his eye from handling disinfectant powder which it was his duty to distribute wherever required. The city's defense, sustained by this Court, was that it was not liable, because the plaintiff was injured in the performance of duties involving a governmental function. The Court expressed the opinion that the plaintiff in handling the disinfectant was engaged in the performance of a governmental function, *because the use of the disinfectant was reasonably incident and appropriate to the operation of the sanitary department of the city for the promotion of the public health.* So here, the inspection and repairing of the garbage trucks in the garage operated solely for that purpose is at least reasonably incident and appropriate to the operation of the garbage trucks for the promotion of the public health. It is my belief that the operation of the garage under the facts in this case is not only reasonably incident and appropriate to the performance of the governmental function, but is in truth a part of the very performance of the function.

Other decisions of the Texas courts support in principle the conclusion expressed in this dissent. They hold that the city is not liable for injuries caused by the negligent construction or maintenance of an instrumentality owned and maintained by the city in the furtherance of a governmental function, even though no negligence is shown in the actual performance of the function. City of Munday v. Shaw, 100 S. W. 2d 765; Barnes v. City of Waco, 262 S. W. 1081, application for writ of error refused; Adkinson v. City of Port Arthur, 293 S. W. 191, application for writ of error refused; Ballard v. City of Fort Worth, 62 S. W. 2d 594, application for writ of error refused; McVey v. City of Houston, 273 S. W. 313; Braun v. Trusees of Victoria Independent School District, 114 S. W. 2d 947, application for writ of error refused.

The opinion of the majority cites five decisions of courts of other states, three of them decisions of the Oklahoma court.

The case upon which chief reliance is placed is Oklahoma City v. Foster, 118 Okla. 120, 247 Pac. 80, 47 A. L. R. 822. Any value that case might have as a persuasive authority is in a great measure destroyed by the contents of the opinion. It uses as authority a decision of the Oklahoma court, City of Shawnee v. Roush, 101 Okla. 60, 223 Pac. 354, holding that a city is liable for injuries of a patient caused by the negligence of an employee of the city hospital, which is contrary to the decisions of this Court. It is interesting to observe that the decision in City of Shawnee v. Roush was made nothwithstanding Oklahoma statutes then in effect, similar to the Texas statutes discussed in City of Dallas v. Smith, 130 Texas 225, 107 S. W. 2d 872, which authorized cities in Oklahoma, in the interest of the public health, to erect and maintain hospitals and made it the duty of the mayors and councils to enforce all rules and regulations for the public health as prescribed by the State Board of Health, Oklahoma Statutes of 1941, Title 11, Sec. 665, Title 63, Secs. 10, 11. And at the end of the opinion in Oklahoma City v. Foster the decision is placed in part upon the startling conclusion that while the city acts in a governmental capacity in determining the kind, character and capacity of motor vehicles it will require for the police department, when these questions have been determined, it acts in a ministerial capacity in the execution of the work and the management of the property, and for negligence in the execution of the work and the management of the property the city is liable. The other two Oklahoma cases merely follow the Foster case. The facts in the Nebraska case, Levine v. City of Omaha, 102 Neb. 328, 167 N.W. 214, are so different in many respects from the facts in the instant case that it is not authority for the decision of the majority. That case is not one of negligent inspection or repairing of a motor vehicle. The garage from which the car was taken was maintained to care for automobiles used by the street department as well as those used by the police department. The case turned on a question of agency, the automobile that caused the injury having been entrusted by the foreman of the garage to one who was not an employee of the city. The California case, Bertiz v. City of Los Angeles, 74 Cal. App. 792, 241 Pac. 921, is by an intermediate appellate court, and the garage was maintained by the city for repairing all automobiles owned by the city except those belonging to and operated by the bureau of power and light and the water department.

The decision of the majority appears from the decision itself and from expressions in the opinion to be influenced by disapproval of the rule that exempts cities from liability for neg-

ligence in the performance of governmental functions. The opinion takes pains to point out that the rule has been criticized and questioned, citing cases from other jurisdictions. Finally it is said in the opinion that to agree with petitioner's contention would be to extend the immunity now allowed to cities. The decisions of the courts of this state, including those cited herein, as well as others, do not justify these statements.

It is my belief that the decision is not merely a strict construction of the doctrine but is a serious impairment of it and is a step that probably will lead to the destruction of it. If the established law of this state that cities are not liable for injuries caused by negligence of employees engaged in the performance of governmental functions is to be changed, it should not be changed by a process of impairment, not heretofore used, which devides the function or its performance into parts and designates one part governmental and the other part propriety. It would be better for the Court to meet the question squarely and overrule the prior decisions. It would be still better that the law on this question, so well settled and followed so long, be changed, if it is to be changed, by legislative enactment. This Court should remember what was said by it in City of Port Arthur v. Wallace. There the Court, referring to the rule as to liability of the city for negeligence in discharging its proprietary functions and the rule as to nonliability for negligence in discharging its governmental functions, said: "The rule of liability in one function and nonliability in the other is so well established in this State that, if change is to be made, it should be made by the legislature and not by the courts." 141 Texas 201, 204, 171 S. W. 2d 480.

The function, whether governmental or proprietary, includes and should be held to include, all of the elements or parts of the function. Unless it is so held there will no longer be a well defined distinction between governmental and proprietary functions. The principal vice in the decision of the majority is that it opens the way to the destruction of a long established principle of law by taking apart heretofore well established governmental functions and seeking to find in some part something that may seem to be proprietary in nature.

Judgment should be rendered for the City of Houston.

Associate Justices Sharp, Garwood and Wilson concur in this opinion.

Opinion delivered June 13, 1951.

Rehearing overruled July 25, 1951.