George SCHWEIKERT, Jr., Plaintiff-Respondent,

v.

KANSAS CITY, Missouri, a Municipal Corporation, Defendant-Appellant.

No. 23237.

Kansas City Court of Appeals.

Missouri.

June 4, 1962.

Richard H. Koenigsdorf, City Counselor, John Cosgrove, Timothy D. O'Leary, Associate City Counselors, Kansas City, for appellant.

Thaine Q. Blumer, Thomas J. Brown, Blumer & Wright, Kansas City, for respondent.

BROADDUS, Judge.

Plaintiff sued Willie Anderson and Kansas City for personal injuries and property damages growing out of a collision wherein the City's truck, being used for street cleaning at the time and being driven by Anderson, collided with the rear of plaintiff's passenger car while it was stopped by traffic lights at a street intersection. Judgment was for plaintiff, as against Kansas City, in the sum of $5000. There was a verdict in favor of the co-defendant, Anderson. Kansas City, hereafter known as defendant appealed.

On October 2, 1961, we handed down our opinion affirming the judgment. Defendant filed a motion for re-hearing, which was sustained, and the case has again been argued and submitted.

There was evidence to the effect that Anderson, a regular employee of defendant, was the operator of a garbage truck owned by defendant; that it had been "loaned" by the garbage department to the street department in January, prior to the occurrence of the accident on June 12, 1958, and was, at the time the collision occurred, being used to pick up trash on Troost, a north-south street; that plaintiff drove his Ford car south on Troost and stopped at 39th Street in obedience to traffic regulations; that the truck approached from the north and collided with the rear of the automobile knocking it several feet to the south, into the intersection.

Officer Dunlap, of the accident investigation unit, testified for defendant on direct examination to the effect that he was sitting in his police car at the curb on 39th, west of Troost, facing east; that he heard air brakes, "not once but twice", and saw the truck strike the Ford automobile; that he walked up to the scene and talked to the respective drivers. His testimony as to what Anderson told him is as follows:

"He told me that he was following this car up the street and he realized that there was going to be some danger about thirty feet away when he noticed this car stop; he said he tried his brakes once and they didn't work and he tried them again and they didn't work but they held on the third try but then it was too late to avoid striking the car. He said he was * * *".

On cross-examination he said that the speed of the truck was "very slow"; that there were no skid marks.

Plaintiff testified on direct examination, without objection, that a city garbage truck struck his automobile in the rear, while parked with the brakes on, and knocked it into the intersection; that he over-heard a conversation between the driver of the truck and the traffic policeman; that Anderson said: "Well, I had it all the way down and it didn't do nothing"; that the policeman tried the truck brakes; that Anderson then said: "he'd been trying to have the brakes fixed for several weeks, didn't have no luck". On cross-examination he stated that the pedal went down to the floor board when officer Dunlap tested the brakes.

Anderson's deposition had been taken and, at the trial, his whereabouts were unknown. Parts of the deposition were read in evidence over defendant's objection. Anderson stated: "I was driving along between fifteen and twenty miles an hour going south on Troost and there was a guy a good ways in front of me, and the lights caught him and he stopped and I hit my brakes and they didn't stop.

* * * I had been driving the truck, I don't know exactly, I guess about a year, and the brakes had been pulling one way and pulling the other, and it had been in the shop about six or seven times before that wreck"; that, before the wreck, it would always stop "but they didn't act like they should"; that the truck was repaired "at the garbage place".

Defendant offered evidence tending to prove that it was customary to check brakes on its vehicles every 300 hours, or about every six to eight weeks; that the records indicated that this truck had last been repaired in June 1957, before the collision a year later. No records of inspection were offered later than the above. Defendant maintained a garage called the "Department of Refuse Garage" for the repair of vehicles used in the garbage department.

■ Defendant contends that the court erred in refusing to direct a verdict in its favor since it is undisputed that the vehicle involved in the collision was being used for street cleaning, its operation was a governmental function for which the City is not liable in damages, citing the case of Lober v. Kansas City, 74 S.W.2d 815 (Mo.Sup.).

On the other hand, plaintiff asserts that the negligence of defendant did not result from the governmental function of the City, but from the operation of a garage by the City, and for such negligence the City is not immune, citing Dallas v. St. Louis, 338 S.W.2d 39 (Mo.Sup.).

The instant case was tried and submitted on the theory that the accident was due to defective brakes and to the failure of defendant to inspect and repair them after notice of the defective condition. There was substantial evidence to establish defective brakes as the cause of the collision; that this condition had existed for a long period of time; and that defendant knew of the condition and had the vehicle in the garage with opportunity to make proper inspections and repairs.

In the Dallas case the plaintiff sought to recover damages from the City for the wrongful death of her husband. The City filed a motion to dismiss her petition because it did not state a claim upon which relief could be granted. The motion being sustained and judgment of dismissal entered, plaintiff appealed. The plaintiff's petition alleged "that Dallas had been employed by the City as a motor vehicle mechanic 'in the City Refuse Division Garage * * * *wherein the City* * * * operates a garage for the servicing and maintenance of motor vehicles owned and operated by the City; * * * that at the time the said James O. Dallas received the injuries resulting in his death he was engaged in working upon and servicing a garbage and refuse pick-up truck * * *; that in the operation of said service and maintenance garage the defendant City was engaged in a proprietary activity and was not then and there performing a governmental function' ".

The sole question presented in the Dallas case was whether, under the facts pleaded in the petition the City was acting in its governmental or in its corporate capacity in the establishment and operation of the garage. In its brief the City asserted that the garage was used solely for servicing garbage trucks. The court found that not to be true and then said: "We must dispose of this appeal on the allegation that the city owned and operated the garage for the maintenance and repair of city owned motor vehicles whether used in the performance of a governmental or proprietary function". The opinion discussed at length the cases of Oklahoma v. Foster, 118 Okl., 120, 247 P. 80, 47 A.L.R. 822, and City of Houston v. Shilling, 150 Tex. 387, 240 S.W. 2d 1010, 26 A.L.R.2d 935. It also said: "In 26 A.L.R.2d 944, under the caption 'Operation of garage for maintenance and repair of municipal vehicles as governmental function,' is digested opinions of the states that have ruled the question. From a consideration of these cases, the author concludes: 'It has been quite gen-

erally held in the cases which have arisen that the operation of a garage for repair and maintenance of municipal vehicles is, regardless of the function the vehicles themselves may be engaged in, a proprietary or corporate function, such as will render the municipal corporation liable for injuries resulting from the negligent operation, maintenance, or repair of vehicles by the employees of the garage.' "

In remanding the Dallas case our Supreme Court said: "In City of Houston v. Shilling, 150 Tex. 387, 240 S.W.2d 1010, 26 A.L.R.2d 935, the Supreme Court of Texas goes further than is necessary in the instant case". The same is true in the case at bar. The evidence in the instant case does not support defendant's assertion that only garbage trucks were repaired at the garage in question. In fact, the transcript reveals that garbage trucks are the responsibility of the Motor Equipment Division, as are all city vehicles. This division maintains more than one garage, and the garage that the garbage truck was inspected and repaired by is called the Department of Refuse Garage, and that particular garage repairs vehicles for other departments, other than the Refuse Department.

The case of Lober v. Kansas City, 74 S.W.2d 815, upon which defendant relies was fully discussed in the Dallas opinion and held not to be controlling. We rule the contention against defendant.

■ But defendant complains that certain vital testimony, contained in the deposition of Willie Anderson, was inadmissible and should have been excluded upon its objection. It says his testimony concerning the condition of the brakes, the City's knowledge thereof, and its opportunity to repair constituted an admission against interest by an employee, and was not admissible against the principal. It cites and relies on our holding in Davis v. Sedalia Yellow Cab Co., Mo.App., 280 S.W. 2d 869, 870. Anderson's testimony by deposition, he not being present in court, was

admissible as direct evidence of the existence of relevant and substantive facts. He was an eligible witness and, not being present in court, his deposition was admissible. It should not have been excluded. The facts here and those in the Davis case are dissimilar.

■ Defendant assigns error in the giving of plaintiff's Instruction 7 because "There is no evidence to support the submission that the aggravation of respondent's hernia was rendered more difficult to cure, or that his condition was rendered more serious, as a result thereof". Plaintiff testified in detail concerning the size and condition of his pre-existing incisional hernia, before the collision occurred, and to his condition after the accident. According to his testimony, there was a material widening between the lips or edges of the tissue over the weakened area under the abdominal skin. He stated that he had been medically advised, prior to the accident, that surgery would not be required, that a binder would hold him safely. There was medical evidence to the effect that an operation to cure the condition, existing afterward, would be required, and that it would be a difficult operation because of the previous operation and its effect on plaintiff's condition. Defendant's contention lacks merit.

It is next urged that the verdict is excessive. The evidence is to the effect that plaintiff's automobile, valued at $198 was a total loss. Surgery fees for an operation would cost $250, hospital and incidental fees, from $300 to $400; X-Rays cost $90; and doctor bills were $40. It is not shown how much time he might lose from work because of the operation, or that he will be made well.

■ In determining whether a verdict for personal injuries is excessive each case must be decided on its own peculiar facts. As stated in the case of Breland v. Gulf, Mobile and Ohio Railroad Co., 325 S.W.2d 9, 16, Mo.Sup.: "An appellate court should not interfere with the action

of the jury in this respect unless the injustice of the size of the verdict is manifest. * * * Consideration must be given to the purchasing power of money, and we must bear in mind the inroads inflation had made on the bargaining power of the dollar at the time of the rendition of this verdict (January, 1958). The failure of the trial judge to set aside the verdict as excessive is significant". We are inclined to follow, and not interfere with, the conclusion of the jury and the trial court in the instant case.

The judgment is affirmed.

All concur.