The CITY OF HOUSTON, Appellant,

v.

Charles CELAYA et ux., Appellees.

No. 14481.

Court of Civil Appeals of Texas.

Houston.

May 6, 1965.

Rehearing Denied May 27, 1965.

John Wildenthal, Jr., City Atty., Edgar Pfeil, Sr. Asst. City Atty., Herbert M. Beazley, Asst. City Atty., Houston, for appellant.

Frank T. Abraham, Bill Allen, Houston, Brown, Kronzer, Abraham, Watkins & Steely, Houston, of counsel, for appellees.

COLEMAN, Justice.

Appellees sued to recover damages for personal injuries sustained when their automobile was struck from the rear by a garbage truck belonging to the City of Houston while they were stopped at a traffic signal.

Judgment was entered for the appellees based on jury findings that the brakes on the truck were defective; that the City of Houston garage negligently failed to make proper inspection of the truck prior to the collision, which was a proximate cause of the collision; that the City of Houston failed to maintain all brakes on the truck in good working order and in such adjustment as to operate as equally as possible with respect to the wheels on opposite sides of the vehicle prior to the collision, which was negligence and a proximate cause of the collision; that the City of Houston failed to maintain the brakes on the truck in question prior to the collision in such a manner as they would have been maintained by a person of ordinary prudence in

the exercise of ordinary care under the same or similar circumstances, which was a proximate cause of the collision; that the garbage truck on the occasion in question was not capable of being stopped on a dry, smooth, level road free of loose material, upon application of the service "foot" brake within 30 feet if traveling 20 miles per hour before brake application [as required by an ordinance of the City of Houston], which was a proximate cause of the collision; and that the collision was not the result of an unavoidable accident.

Appellant has assigned several points of error which collectively present the contention that there was no evidence to authorize the submission of the issues on negligence and proximate cause to the jury, or that the answers made to those issues were so contrary to the weight and preponderance of the evidence as to require the granting of a new trial. By other points they attack the answer made by the jury to the issue on unavoidable accident; the rendition of a judgment against the City because the negligence, if any, was negligence in the exercise of a governmental function; the refusal of the trial court to submit requested issues to determine whether the driver of the truck was acting under an emergency at the time of the collision, whether he acted as an ordinarily prudent person would have acted under the same or similar circumstances after such emergency arose, and whether such emergency, if any, was not the sole proximate cause of the collision in question.

The parties are generally in agreement that Mrs. Celaya properly stopped in response to a traffic signal and that thereafter the garbage truck collided with her automobile from the rear because of a failure of the brakes on the truck. There is a conflict in the evidence as to the nature of the failure. The driver testified by deposition sometime before the trial that immediately prior to the accident as he was approaching the stopped car he attempted to apply the brakes and the pedal went to the floor. The brakes worked all right prior to that time.

He testified on deposition that the brakes didn't "kick back" and didn't freeze, "it just went down," " * * * when I went to hit for it, it was giving. See, the brakes was giving all the time and I was still trying to, you know, hit it and see whether it built up or something." In answer to the question: "Pumped it?" he answered: "Yes."

At the trial he testified that on the trip from the truck garage to the scene of the collision he had to apply the brakes and they worked . perfectly. That when he approached the scene the brakes were working and he slowed from 30 miles an hour to 15 miles per hour, but that when he got close to appellees' car, he hit the brakes and they got hard. He testified that he didn't remember his deposition testimony and that the manner of the operation of the brakes as explained in the deposition was not what occurred.

A fellow employee, Lark Pipkin, riding in the truck, testified that the brakes went out all of a sudden; that the driver did all he could; that he pumped the brakes, but they went clear to the floor board. He further testified that after the accident they continued to use the truck all day; that the brakes worked perfectly; that they took it easy and didn't drive fast; that the car would "roll a piece" before it would come to a complete stop; that the brakes were pumped a lot. He testified that no repairs were made on the truck the day of the accident, but that the truck was in the garage the next day, and that no repairs were made at the scene of the accident. He testified that Mr. Milam, the District Director in charge of garbage collection, came to the scene and, in answer to the question: "Did Mr. Milam check the brakes?" said: "No, Mr. Milam, the only thing he done, he talked with the officer and after we left, I don't know what they talked about. He just told us to go ahead on and try to finish the route, and we did what he said." This testimony is significant in that it indicates that the truck left the scene while the officer and Mr. Milam were talking.

The investigating officer testified that after he arrived he tested the brakes by backing the truck a few feet and stopping and then going forward a few feet and stopping, and that he found the brakes adequate; that he saw no one repair the brakes.

Mr. Milam testified that he got to the scene about 20 minutes after the accident; that Earl Winfrey was the driver of the truck and Lark Pipkin and Orville Wright were helpers; that the police arrived soon after he got there; that he called the garage and directed that a mechanic be sent out to the scene and then instructed Winfrey to drive the truck across Post Oak and wait for the mechanic; that he parked it in front of a U-Tote'm Store on Beechnut; that he left before the mechanic arrived.

Orville Wright did not testify. There is evidence that repairs were made to the brake on one rear wheel the day after the collision. There was testimony that the hydro-vac or booster was removed and replaced at the scene of the accident. An expert witness offered by appellant testified that a hard brake would be caused by a failure of the hydro-vac and that replacing a hydro-vac is not something you would do on the street; that it would take about two hours, and then the brakes would have to "bleed" for thirty minutes.

█ Appellant's points of error are based on its theory that the brakes were "hard" when the driver attempted to apply them prior to the collision. We cannot say that the evidence requires such a finding. There is sufficient evidence to support a conclusion that the brakes were soft. A condition of "softness" is relative. While the officer testified that as far as he could tell the brakes were in good working order, he was not asked whether they were hard or soft. He stated that he drove the truck "a foot or two," and obviously was not required to make a hard application of the brakes in order to stop the truck. The credibility of the witnesses and the weight to be given their testimony are matters for determination by the jury. The answers of the jury to the negligence and proximate cause issues are supported by substantial evidence and are not contrary to the great weight and preponderance of the evidence.

█ There was testimony that the garbage trucks made many stops each day and in addition had to make several trips to the garbage dump. There was expert testimony that vehicles put to such use should have periodic inspections and that visual inspection of the brakes by removing the wheels should be a matter of routine. It is undisputed that no routine inspection of the truck or the brakes thereon was undertaken by the garage and the garage had the duty to inspect the trucks. There was testimony that the trucks were inspected at the garage only when the driver reported trouble. It is a matter of common knowledge that at times automobile brakes fail suddenly. There is testimony that a cause of brake failure can be the soaking of the brake lining by a seepage of oil or brake fluid and that this is a condition which could be ascertained by visual inspection. There is also evidence that soft brakes can be caused by loss of fluid or by excessive wear on brake linings, conditions which proper inspection would detect. Under the evidence in this case the jury could reasonably have found, as they did, that the failure of the City garage to make periodic inspections of the brakes on this truck was negligence and a proximate cause of the collision. This constitutes negligence in the operation of the municipal garage, which is not a governmental function of the City. The City, therefore, is not shielded from liability for damages caused by its negligence. City of Houston v. Shilling, 150 Tex. 387, 240 S.W. 2d 1010, 26 A.L.R.2d 935.

█ There was no error in the refusal of the trial court to submit the requested issues on emergency and sole proximate cause. There is nothing in the evidence to suggest an emergency brought about by conditions other than sudden brake failure. No negligence on the part of appellees is suggested by the evidence. The issue on prox-

**546**

imate cause as submitted was predicated on an affirmative answer to the issue on emergency, and, therefore, was not required to be submitted unless the issue on emergency should have been submitted. No issues were submitted to the jury concerning specific conduct of appellant or its agents arising during or after the emergency. Issues on "sudden emergency" were not raised by the evidence. Beck v. Browning, 129 Tex. 7, 101 S.W.2d 545; White v. Munson, Tex.Civ.App., 162 S.W.2d 429; Ynsfran v. Burkhart, Tex.Civ.App., 247 S.W. 2d 907, ref. n. r. e.

It would unduly lengthen this opinion to set out the evidence relating to damages. We have carefully studied the testimony and are of the opinion that it fully supports the awards made by the jury and that the damages awarded were not excessive.

■ There was testimony that Mrs. Celaya had a pre-existing, but non-symptomatic, arthritic condition and x-ray pictures made prior to the collision indicated emphysema, but there was testimony that this condition was not symptomatic. There was testimony that the injury suffered in the collision caused increased susceptibility to respiratory infections and that the arthritic condition was aggravated by her injury. There was general medical testimony that the medical bills were made necessary by the injury sustained in the collision. The points presenting the objection that the evidence failed "to separate the medical charges for treatment of conditions of Mrs. Celaya's health proximately resulting from the accident, if any, from those medical charges necessarily due to treatment of pre-existing physical conditions of Mrs. Celaya," do not present error.

■ Finally, appellant urges that the judgment should be reversed and a new trial ordered because counsel for appellees procured from the official court reporter certain x-ray films during the course of the trial without the prior approval of the trial court, or the knowledge of counsel for appellant, and took them to the home of a doctor for his examination and evaluation prior to being called as an expert witness. A motion for mistrial was made and it was denied. It is contended that this action constitutes fundamental error and a deprivation of the appellant's rights to a fair and impartial trial under the State and Federal Constitutions. There is no contention that the records were in fact altered or lost or in any manner tampered with. Appellant has cited no authority to sustain his point. We are unable to see how the action, of which complaint is made, harmed appellant, or in any manner caused the rendition of an improper judgment.

The judgment of the trial court is affirmed.