## LIBERTY CAB CO. v. GREEN.

No. 4943.

Court of Civil Appeals of Texas. Beaumont.

Nov. 19, 1953.

Rehearing Denied Dec. 9, 1953.

Kemper & Wilson, Houston, for appellant.

Cam Hightower and Tom Wheat, Liberty, for appellee.

R. L. MURRAY, Justice.

This is an appeal by Jim Clark, doing business as Liberty Cab Company, from a judgment in the district court of Liberty County against him and in favor of appellee, Will Green. Green sued appellant for damages for personal injuries suffered by his wife, Clara Green, in a collision between an automobile and a taxicab owned by appellant, while Clara Green was a passenger for hire in the taxicab. The case was tried to a jury, and on the jury's verdict and a stipulation by the parties the trial court rendered judgment for appellee against appellant for the sum of $12,382. After his amended motion for new trial was overruled, appellant duly perfected his appeal.

The appellant's points of error on appeal are as follows:

*First point:* The error of the court in not granting appellant a new trial, because when examined on his voir examination by appellant's attorney concerning his qualifications, interest, bias and prejudice as a juror, each of four prospective jurors (Tait, Robertson, Carouthers and Knight) who each participated thereafter as a juror in the verdict in this case, concealed mate-

rial information, which if revealed by him, would have caused a peremptory challenge to have been exercised against him by appellant's attorney; and if the information concealed by him alone would not have sufficed to entitle appellant to a new trial and to reversal of the judgment as sought by appellant on this appeal, then the combined information concealed by the four prospective jurors together, did suffice to do so and is sufficient to require that the reversal be granted by this Honorable Court.

*Second point:* The error of the court in overruling defendant's "Motion to Exclude Findings of Fact as Any Part of Record" where this was a case tried to a jury.

*Third point:* The error of the court in refusing a defendant's witness the privilege during the giving of her testimony, of refreshing her memory from a statement in writing which she had previously executed.

*Fourth point:* The error of the court in refusing to permit the defendant for the purpose of contradicting a material statement as made by one of his witnesses during the giving of her testimony and for her impeachment on the subject, to introduce into evidence a statement which she had previously executed in writing.

■ We will consider appellant's second point first. We find no error in the action of the trial court in overruling the appellant's motion to exclude the findings of fact from the record in this case. The findings of fact were made by the trial court and were included in the court's order overruling the defendant's amended motion for new trial. The appellant relies upon the cases of Farr v. Kirby Lumber Corp., Tex.Civ.App., 203 S.W.2d 815 and Jones v. Elliott, Tex.Civ.App., 259 S.W.2d 288, as authority for his statement that the trial court had no authority to make such findings of fact in the Farr case. That case was tried to a jury and resulted in an instructed verdict. The holding of the Court of Civil Appeals was that any attempted findings of fact made by the trial court in regard to the evidence received on the trial of the case were without any legal significance on appeal, since the trial court had no authority to make such findings of fact. In the instant case, however, on a hearing on a motion for new trial, which motion alleged misconduct on the part of some of the jurors who heard the case, the law places the authority and responsibility upon the trial judge to hear and determine questions of fact in making a decision upon such a motion. It is also a well recognized rule that when a trial judge overrules a motion for new trial without making any findings of fact, a reviewing court will assume that the trial court found adversely to all the allegations of fact alleged by the complaining party. We think there is no question but that the trial court had the authority to make findings of fact in passing upon this motion for a new trial. As a reviewing court, we are bound by such findings of fact by the trial court, if such findings are supported by sufficient evidence adduced upon such hearing. See Eubank v. Hopkins, Tex.Civ.App., 238 S.W.2d 720.

Under his first point the appellant shows that at the time of the examination of the jury panel in the trial court he asked a number of questions addressed to the panel as a whole and later examined each prospective juror individually. He contends that he inquired in particular of the jurors, Tait, Robertson, Carouthers and Knight, whether each of them had had any claims for workmen's compensation benefits and that all four of said jurors had had such claims and had collected and received benefits for workmen's compensation and did not reveal to him on examination that they had had such claims; that if such information so concealed had been given by the prospective jurors to his counsel at the time of examination it would have caused a peremptory challenge to be exercised against them by his attorney. The appellee, however, answers this contention by pointing out that the questions by the appellant's counsel to the entire panel of prospective jurors as a group and also to the individual members of the panel con-

veyed the idea to the jurors that counsel was inquiring about lawsuits or contested controversial claims and thus such questions did not amount to such diligence on the part of appellant's counsel to discover the facts about the four individual jurors and their compensation payments as will require a reversal of the case.

We copy here the questions asked the four jurors by counsel for the appellant and the answers of the jurors, on voir dire examination.

Knight (first member of the panel questioned on voir dire).

"Q. Mr. Knight, I will ask you whether or not you have yourself, or any of your family, including your wife, children, brothers, sisters or parents, have had occasion to have a lawsuit for personal injuries, either from an automobile wreck, workmen's compensation or otherwise? A. No, sir."

Carouthers (fourth member of the panel questioned on voir dire).

"Q. Have you ever had the experience of either having a claim for yourself or any member of your family, including your parents, brothers or sisters, growing out of a collision or compensation claim? A. No, sir."

Tait (tenth member of the panel questioned on voir dire).

"Q. Have you ever had any type of claim or damage suit about which I have asked here, either for yourself or any member of your family? A. No, sir."

Robertson (twenty-second member of the panel questioned on voir dire).

"Q. Have you had any claims, either yourself or any member of your family, of the type I have been asking about? A. No, sir."

In his questions to the other twenty-one members of the jury panel counsel for the appellant asked the following questions:

Harris (prospective juror number two).

"Q. Have you ever had any type of such claims as I have mentioned here for personal injuries, either for yourself or any member of your family?"

Bashem (prospective juror number three).

"Q. Mr. Bashem, you heard my question here about ever having a lawsuit for personal injuries either yourself or any member of your family, have you ever had any such lawsuits or claims?"

Whitmire (prospective juror number five).

"Q. Mr. Whitmire, have you ever had any claims or lawsuits of the type I have been asking about either yourself or any member of your family?"

Wade (prospective juror number six).

"Q. Mr. Wade, you heard my questions about lawsuits or claims for personal injuries; have you or any member of your family had any such claim?"

Cross (prospective juror number seven).

"Q. Mr. Cross, have you ever had any type of claim or lawsuit either for yourself or any member of your family of the type I have been asking about?"

Pounds (prospective juror number eight).

"Q. Mr. Pounds, you have heard my questions about claims and lawsuits; have you had any such claims either yourself or any member of your family?"

Reed (prospective juror number nine).

"Q. Mr. Reed, have you had occasion to have any such claims or lawsuits either yourself or any member of your family as I have been asking about here?"

Aucoin (prospective juror number eleven).

"Q. Mr. Aucoin have you ever had any type of claim or lawsuit as I have been asking about here, either for yourself or any member of your family?"

Poole (prospective juror number twelve).

"Q. Now, have you had any type of claims or lawsuits, either yourself or any member of your family of the type I have been asking about?"

Patilla (prospective juror number thirteen).

"Q. You have heard my questions here about personal injury claims or lawsuits; have you ever had any such claims or lawsuits either for yourself or any member of your family?"

Johnson (prospective juror number fourteen).

"Q. Have you ever had any type of personal injury or lawsuit for personal injuries of the type of claims and law suits I have been asking about here?"

Moulder (prospective juror number fifteen).

"Q. Have you ever had any claim or lawsuit, either for yourself or any member of your family of the type I have been asking about?"

George (prospective juror number sixteen).

"Q. George, have you ever had any type of claim or lawsuit either for yourself or any member of your family, of the type I have been asking about?"

Parker (prospective juror number seventeen).

"Q. Have you had any type of claims or lawsuits such as I have been inquiring about either for yourself or any member of your family?"

Simmons (prospective juror number eighteen).

"Q. Mr. Simmons, you heard my questions about these claims for injuries; have you had any such experience either yourself or any member of your family?"

Smith (prospective juror number nineteen).

"Q. You heard my questions here about personal injury claims or lawsuits; have you or any member of your family had any such claims?"

Carter (prospective juror number twenty).

"Q. Have you or any member of your family had any type of such claims or lawsuits as I have been asking about?"

Hamilton (prospective juror number twenty-one).

"Q. Have you or any member of your family ever had a claim or lawsuit of the type I have been inquiring about?"

Fregia (prospective juror number twenty-three).

"Q. Have you had any type of claim either yourself or any member of your family such as I have inquired about from the other jurors?"

Land (prospective juror number twenty-four).

"Q. What about claims for yourself or member of your family, have you had any such claims of the type I have been inquiring about?"

Graham (prospective juror number twenty-five).

"Q. What about claims or lawsuits either for yourself or members of your family, have you had any such experiences of the type I have been inquiring about?"

In its order overruling the appellant's amended motion for new trial, after hearing the evidence in regard to jury misconduct, the court included the following findings of fact:

1. The court finds as a fact from observation of the jurors Knight, Carruthers, Tate, Carter and Robertson, both during voir dire examination and in their testimony on defendant's amended motion for a new trial and from their testimony given on said hearing on said amended motion for a new trial, are uneducated working men and are of average intelligence for laboring men.

2. The court finds as a fact that the juror Knight never had a lawsuit himself either for personal injuries in an automobile wreck, workmen's compensation law or otherwise; neither did his family including his wife, children, brothers, sisters, or parents.

3. The court finds as a fact that the juror Tate sustained three minor injuries while on the job and that on one of said occasions he collected workmen's compensation of $25 per week for about a month; that said juror was voluntarily paid the compensation and he did not actually assert a claim for compensation or demand payment of compensation; that his employer handled the execution of the claim and that the juror did not know the claim had been filed with the Industrial Accident Board; that for the other two injuries which the juror Tate received on the job, he was paid straight time by his employer and no claim was ever made by him; that the compensation checks were voluntarily mailed to him.

4. The court further finds as a fact that the juror Robertson sustained two minor injuries on the job; from the first injury he was off from work from four to six weeks, and for the second injury he was off about three weeks; that the said juror never personally made claim for compensation nor demanded the payment of compensation for his injuries, but that his employer actually and voluntarily handled the execution of the claims and the juror did not know that it had been filed with the Industrial Accident Board. Juror Robertson's mother was in a car wreck and had been hospitalized, but so far as the juror Robertson was concerned, she had never presented any claim nor made any demand for damages and he did not know if anyone had paid her, and if so, who.

5. The court further finds as a fact that the juror Carruthers sustained a hernia on the job about a year before the trial of this cause and was operated upon and received compensation at the rate of $25 per week for twelve weeks after which time he returned to his work. The court further finds as a fact that the said juror Carruthers never actually made and presented a claim for compensation and never made demand for the payment of compensation, but that the payments were made voluntarily.

6. The court further finds as a fact that the juror Carter burned his finger on the job, and received medical treatment which he paid for and he never asserted or made a claim against anyone.

7. The court finds as a fact that neither jurors Knight, Tate, Robertson, Carruthers or Carter ever had a lawsuit for themselves. The court further finds as a fact that no member of the families of the jurors Knight, Tate, Carruthers, and Carter ever had a lawsuit or claim of any kind against any person.

8. The court further finds as a fact that no member of the family of the juror Robertson ever had a lawsuit or a dispute with anyone over the personal injuries had by his mother.

9. The court further finds as a fact that the questions asked by counsel for defendant on voir dire examination to the jury panel as a whole and particularly to the jurors Knight, Tate, Carruthers, Robertson and Carter were so framed and in such form as were reasonably calculated to confuse and mislead the said jurors Knight, Tate, Carruthers, Robertson and Carter in thinking and concluding that counsel for defendant had reference to and was actually inquiring of them about lawsuits and contested and disputed claims and controversies.

10. The court further finds as a fact that by reason of the nature and form of the questions propounded by the said counsel for defendant of the jury on voir dire examination that the said jurors Knight, Tate, Carruthers, Robertson and Carter were confused and misled into thinking and concluding that counsel for the defendant was inquiring about lawsuits and contested and disputed claims and controversies and that said counsel for the de-

fendant did not intend to include and embrace within his said questions voluntary payments of compensation benefits for injuries sustained on the job under and in admitted liability.

11. The court further finds as a fact that counsel for the defendant did not during his voir dire examination of the jury panel and particularly in his voir dire examination of the jurors Knight, Tate, Carruthers, Robertson and Carter inquire or ask whether or not they had been injured on the job or whether or not they had ever collected compensation, and had they been so asked, they would have readily admitted the injuries they sustained on the job and the payment of compensation about which they testified on the hearing on the amended motion for a new trial.

12. The court further finds as a fact that Mr. Kemper, the attorney for defendant, who questioned the jury panel on voir dire is a very able trial lawyer and has had many years experience as a trial lawyer and did know, or in the exercise of reasonable diligence, should have known that the jurors Knight, Tate, Carruthers, Robertson and Carter were working men of average intelligence and would likely be misled and confused by the form and nature of his questions.

13. The court further finds as a fact that counsel for the defendant failed to exercise reasonable and proper diligence to elicit from said jurors Knight, Tate, Carruthers, Robertson and Carter that they had been hurt on the job and had collected compensation on account of said injuries; and that said jurors Knight, Tate, Carruthers, Robertson and Carter honestly answered the questions propounded by counsel for defendant as they understood the meaning thereof.

14. It is further found as a fact that the defendant was in no wise prejudiced by the answers of the jury to such questions and was not prejudiced in accepting them as jurors in said cause; that neither the jurors Knight, Tate, Carruthers, Robertson or Carter gave any thought or consideration to their previous minor injuries and the small amount of compensation and medical payments if any that they received, and that each of said jurors had fully recovered from their injuries at the time they were accepted as jurors in this case.

From a careful reading of all the testimony in the statement of facts we conclude that the findings of fact made by the trial court in the above order overruling the motion for new trial are supported by the evidence and that we are bound by such findings of fact. The suit being tried was not a suit for workmen's compensation benefits but, as was stated by counsel for both parties at the beginning of the voir dire examination, it was a suit for personal injuries growing out of a collision between a taxicab and an automobile. Counsel for the appellee, plaintiff in the trial court, stressed the idea in his questions that the case was one in which plaintiff was a Negro man suing a white man for personal injuries suffered by plaintiff's wife while she was a passenger in a taxicab owned by the white man, and he inquired with some diligence as to whether any of the prospective jurors would have any difficulty in viewing the plaintiff's case without any bias or prejudice against the plaintiff. Appellant's counsel also inquired of the members of the panel in a group whether any of them had any bias or prejudice against taxicabs and taxicab drivers which might improperly influence them in deciding the case involving a taxicab collision. All of such questions, together with the form of the questions asked the individual members of the panel by appellant's counsel, are in support of the conclusion by the trial court that counsel for the appellant by his questions was not diligent in failing to elicit from the four jurors complained of that they had been involved in industrial accidents or had been hurt on the job and had collected compensation because of such injuries.

It is only where a partial, biased or prejudiced juror was selected without fault or lack of diligence on the part of counsel acting in good faith upon the responses of the juror on the voir dire that

there is ground for a new trial. The requisites of such a showing are: (1) that the complainant sufficiently examined the juror touching his qualifications; (2) that the complainant was misled by the silence of the juror on a collective examination or by his answers when individually examined. 26 Tex.Jur. 776 and cases cited. No error is shown by appellant's first point and it is overruled.

Appellant's third and fourth points are briefed and presented together by the appellant and we will consider them together. Counsel for the appellant on the trial of the case called Dorothy Edwards as a witness as to the details of the taxicab-automobile collision out of which this suit arose. She was a passenger in the taxicab with Will Green's wife shortly before the collision but she was the first to arrive at her destination and was let out of the cab shortly before the collision. She had walked almost to the door of her house after leaving the cab when she heard the sound of the collision. She immediately walked up to the scene of the collision a few hundred yards away. When she arrived there she talked to Mitchell, the driver of the automobile that collided with the cab. Counsel for the appellant in his direct examination, after eliciting the above facts, asked her what Mitchell said to her. She answered "I asked him what had happened and he said he didn't remember. He said he just remembered the cars hit together." Counsel then asked her the question, "Did he say he didn't remember or did he say he didn't know?" Her answer was "I don't know." Counsel then asked her whether she gave a statement about the accident and objection was made by counsel for appellee that he was trying to impeach his own witness. Counsel for appellant then argued that he could impeach his witness when he was surprised, that he had a right to introduce her statement to refresh her memory. He further stated that he had never seen or talked to the witness before, that he called her as a witness without talking to her, and thought she would testify to the same things contained in the statement. The entire written statement previously signed by the witness Dorothy Edwards, which consisted of three typewritten pages in the statement of facts, was offered by the appellant and excluded by the trial court on objection by the appellee, the objection being that "He is attempting to impeach her by that statement that has been identified. It is self-serving and deprives this plaintiff of the right of cross-examination."

Appellant says on appeal that in the trial of the case the said Mitchell, the driver of the automobile, testified in detail by deposition as to how the accident occurred; that the jury by its finding exonerated the taxicab driver from four alleged acts of negligence and found him guilty of negligence on only two acts claimed as such by the appellee; that if he had had the benefit of the written statement by Dorothy Edwards that Mitchell told her that he did not know how the accident happened, rather than the testimony Dorothy did give on the trial, that Mitchell told her that he did not remember how the accident happened, the appellant would probably have been able to discredit Mitchell's testimony further in the eyes of the jury and would probably have got a favorable finding from the jury on the two matters of negligence which were found against him; that it was error for the court to refuse to allow him to refresh the witness' memory from the statement in writing, and it was also error to refuse to allow appellant to introduce in evidence her statement in writing. These points are overruled. We believe that no error is shown by them. In the first place the answer of the witness Dorothy Edwards "I don't know" to the question asked her might reasonably be regarded as a simple statement by the witness that she, herself, did not know whether Mitchell told her at the scene of the accident that he didn't remember or he didn't know how the collision occurred. If this view be taken of her answer, then there can be no complaint over the trial court's refusal to allow appellant to introduce her written statement previously made. There appears

**530**

to be very little, if any, difference between her statement on the witness stand that Mitchell said he didn't remember what happened and her statement in the written statement that he didn't know how it happened. This did not, in our opinion, give the appellant the right to introduce in evidence the entire three pages of typewritten statement regarding the details of the collision. Certainly a large portion of such statement was subject to the objection made by the appellee that it was an ex parte statement made without appellee's right of cross-examination. Since a portion of the statement was inadmissible the trial court did not err in refusing to receive in evidence the entire statement, even though a portion thereof might have been admissible. Missouri, K. & T. Ry. Co. of Texas v. Washburn, Tex.Civ.App., 184 S.W. 580. We hold that the testimony of Dorothy Edwards on the trial did not materially differ from her statement in writing previously made; that the appellant was not harmed by the trial court's refusal to receive the written statement in evidence; that no error was shown by such refusal on the part of the trial court, since appellant offered the entire statement and did not limit his offer to the one paragraph containing Dorothy Edwards' statement that Mitchell told her he did not know how the accident happened.

The entire record in this case shows that the evidence was amply sufficient to support the jury's finding of negligence on the part of the taxicab driver and the injuries and damages to the appellee's wife, and the findings that the actions of the driver of the automobile in the collision were not the sole proximate cause of the accident. The appellant makes no complaint of the sufficiency of the evidence. The charge is carefully and correctly drawn and no complaint is made by the appellant as to any portion thereof. The only matters before us are the two procedural matters discussed above and we believe that no error is shown by the appellant under his four points, and the judgment of the trial court should be affirmed.

Affirmed.