**MERCY HOSPITAL OF
LAREDO, Appellant,**

v.

**Maria Eugenia RIOS, et al., Appellees.**

**No. 04–88–00411–CV.**

Court of Appeals of Texas,
San Antonio.

July 19, 1989.

Rehearing Denied Aug. 30, 1989.

Bill Bludworth, William A. Snapp, Houston, for appellant.

Malcolm C. Halbardier, Philip D. Clark, San Antonio, for appellees.

Before REEVES, BUTTS and CARR, JJ.

CARR, Justice.

## OPINION

This is an appeal from an adverse jury verdict in a wrongful death-medical malpractice suit filed by appellees against appellant Hospital and Dr. Beatrice Cantu for damages for alleged medical malpractice

leading to the death of Jesus Manuel Rios. Just prior to trial Dr. Cantu settled with appellees and was dismissed as a party to the lawsuit. The trial court denied appellant's motion for new trial and appellant Hospital perfected this appeal.

Appellant's appeal presents us with the following issues: (1) juror disqualification, (2) jury misconduct, (3) the trial court's refusal to submit appellant's requested special issues, (4) an untimely designated expert witness issue, (5) exclusion of testimony, and (6) several damage issues. We affirm.

In the first point of error appellant complains that the trial court erred in denying appellant's motion for new trial as the statutorily required minimum number of eligible jurors failed to be in agreement in their answers to all the special issues. Specifically, appellant alleges juror disqualification due to the illiteracy of juror Juan B. Rosales in violation of TEX.GOV'T CODE ANN. § 62.102 (Vernon 1988). Appellant's complaint was brought to the attention of the trial court post verdict. When polled, ten of the twelve jurors (including juror Rosales) agreed on all the answers to the special issues. Therefore, appellant argues that juror Rosales' alleged lack of qualification materially affects this verdict because, if disqualified, only nine jurors are in agreement on all answers to the special issues in violation of TEX.R.CIV.P. 292.

The central issue presented in appellant's first point of error is juror Rosales' lack of juror qualification. We overrule appellant's first point of error for three reasons.

■ First, we hold that appellant has waived any complaint. Appellant argues that appellant could not have known of juror Rosales' illiteracy at any time earlier than the post verdict interviews, and in fact, had no reason to doubt his literacy until that time in view of the trial court's general examination of the venire regarding literacy. Therefore, juror Rosales was selected without the fault or lack of diligence on the part of appellant. We disagree.

■ The record is devoid of any challenge for cause due to the qualifications of juror Rosales. In *Liberty Cab Co. v. Green,* 262 S.W.2d 522 (Tex.Civ.App.—Beaumont 1953, writ ref'd n.r.e.), that court held:

It is only where a partial, biased or prejudiced juror was selected without fault or lack of diligence on the part of counsel acting in good faith upon the responses of the juror on the voir dire that there is ground for a new trial. The requisites of such a showing are: (1) that the *complainant sufficiently examined* the *juror touching his qualifications;* (2) that the complainant was misled by the silence of the juror on a collective examination or by his answers when individually examined. (emphasis added)

*Id.* at 528–29. In this case the record reflects that the only inquiry of juror Rosales' qualifications was the collective examination by the trial court of the venire panel. Juror Rosales, after having· been qualified by the trial court for the remaining panel of potential jurors, was not individually voir dired by appellant. An "insufficient voir dire examination" by complainant does not meet the test of the *Liberty Cab Co.* rule and we hold that "no voir dire examination" by complainant also fails to satisfy the test.

Since appellant accepted Rosales as a juror, then waited until after receiving an unfavorable verdict to complain of his lack of qualifications, that matter is waived and cannot be raised on appeal. *Jenkins v. Chapman,* 636 S.W.2d 238 (Tex.Civ.App.—Texarkana 1982, writ dism'd w.o.j); *Bailey v. Tuck,* 591 S.W.2d 605 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.); *Mitchell v. Burleson,* 466 S.W.2d 646 (Tex.Civ.App.—Beaumont 1971, writ ref'd n.r.e.).

■ Secondly, it appears clear from the record that juror Rosales can speak and understand the English language. This is evidenced by his lengthy testimony in English contained in the record of the motion for new trial. It is not reversible error for a juror to lack the literacy qualification, especially when the juror possesses an understanding of the English language.

*Jenkins v. Chapman, supra,* at 240; *Mitchell v. Burleson, supra,* at 658; *Coca–Cola Bottling Co. v. Mitchell,* 423 S.W.2d 413, 418 (Tex.Civ.App.—Corpus Christi 1967, no writ).

■ Thirdly, we disagree with appellant's claim that the evidence offered at the hearing on its motion for new trial regarding juror Rosales' illiteracy was indisputable. We find that juror Rosales' testimony (the only testimony offered) and some, but not all, of the demonstrative evidence was conflicting.

We would first note that it appears from the record that juror Rosales was nervous while testifying regarding his qualifications at the motion for new trial hearing as evidenced by trial counsel's statement to the witness that "I understand. That's all right. I would be nervous, too."

Juror Rosales testified that he was 45 years old; had a sixth grade Texas public school system formal education which was taught in English; was employed by the Laredo Independent School District as a head custodian and uses both reading and writing in the course of his employment; testified that he could read and write the English language; that he had taken his written Texas Driver's License test in 1974 in English; that he himself had filled out and signed his juror information card, and that he had written notes in English during the post verdict interviews with appellant's representatives. He further testified that he understood the court's charge when it was read aloud by both the trial court before the jury retired to the jury room and the jury foreman in the jury room. Our review of the record shows that the Rosales' jury information card and the written notes from the post verdict interview appear to be written legibly in the English language.

In contrast, when asked by appellant's counsel to read aloud from the stand certain parts of the court's charge and write certain statements, juror Rosales complied. However, in both instances his responses call into question the quality of his reading and writing abilities. It is unclear from the record if this was a result of his nervousness while on the stand.

In its brief, appellant argues that, "In fact, the Honorable Elma Theresa Salinas Ender, the judge of the trial court, even indicated to Appellant's counsel that he had established Mr. Rosales' illiteracy to her satisfaction when the trial court said, 'I think your point has been made, Mr. Borchers.'" We disagree. Judge Ender's comment came at the end of the following exchange:

Q. (by MR. BORCHERS): Where you were reading, just keep on going. Do you see the question mark there?

MR. HALBARDIER: Judge, we're going to object to this. All he's doing is harassing this juror. There's no sense in it.

MR. BORCHERS: Your, Honor, I—

MR. HALBARDIER: Just because he can't speak like we can, he can't read like we can, is no reason to be criticizing him up on that stand or attempting to embarrass him. I think the Court has a right to call a stop to this.

MR. BORCHERS: I'm not taking any pleasure in this, your Honor; but these are facts and I'm trying to be as polite as—

THE COURT: I think your point has been made, Mr. Borchers.

We interpret Judge Ender's response as referring to Mr. Borchers' comment of politeness not to juror Rosales' illiteracy. In any event we can and do assume that the trial court, based upon the above evidence, found adversely to appellant's allegations of juror Rosales' illiteracy when it overruled appellant's motion for new trial without making any finding of fact. *Strange v. Treasure City,* 608 S.W.2d 604 (Tex.1980); *Liberty Cab Co. v. Green, supra* at 524.

Based upon our review of all of the evidence, we find that the evidence is sufficient to sustain the trial court's implied finding. Accordingly, appellant's first point of error is overruled.

In the second point of error appellant alleges jury misconduct, and more specifically complains of jury discussion of insurance and a newspaper article.

### Insurance

At appellant's motion for new trial hearing, only two juror-witnesses testified regarding appellant's "discussion of insurance" complaint. Juror Ricardo Rodriguez affirmatively testified that the matter of insurance was discussed by the jury while juror Raymundo Ramirez affirmatively testified to the contrary.

To serve as a basis for the granting of a new trial, alleged jury misconduct must be established as a matter of fact. TEX.R.CIV.P. 327. In the present case, we find that there is conflicting evidence as set out above. The fact question thus created was impliedly resolved by the trial court against appellant by the order overruling appellant's motion for new trial. *Bailey v. Rains*, 485 S.W.2d 837 (Tex.1972).

The Supreme Court in *Strange v. Treasure City, supra,* stated that:

Under Rule 327, Tex.R.Civ.P.:

... the party seeking a new trial on the basis of jury misconduct must establish not only that the alleged misconduct occurred, but also that it was material misconduct, and that based on the record as a whole, the misconduct probably resulted in harm to the complaining party.

608 S.W.2d at 606.

The Court further went on to state:

Whether the alleged misconduct has occurred is a question of fact, and if there is conflicting evidence on this issue, the finding of the trial court is binding on appellate review.

608 S.W.2d at 606.

In view of the conflicting testimony of the only two witnesses to testify on this issue, we are required to follow the trial court's implied finding that this specific act of misconduct did not occur.

### Newspaper Article

We first note that the newspaper article complained of is not part of the record. From our reading of the record we can conclude that the article in question was a newspaper coverage of the present case while trial was in progress. The article focused on the testimony of the Hospital Administrator, Ernesto M. Flores, Jr., concerning the "pending" policies of the Hospital Pediatric Care unit, and an exchange regarding an objection during witness Flores' testimony, all of which took place before the jury.

Having taken place before the jury we hold that under TEX.R.CIV.P. 327(b), and TEX.R.CIV.EVID. 606(b), such would not constitute an "outside influence." *Baley v. W/W Interest, Inc.,* 754 S.W.2d 313 (Tex. App.—Houston [14th Dist.] 1988, writ denied). Clearly no error is shown. TEX.R. APP.P. 81(b)(1).

Appellant's second point of error is overruled.

In points of error three to eleven, appellant complains of the trial court's refusal to submit appellant's requested special issues concerning Dr. Beatrice Cantu's acts and/or omissions in treating Jesus Manuel Rios and comparative causation. All of the refused special issues complained of by appellant address some aspect of Dr. Cantu's liability.

In point of error fourteen appellant complains of the trial court's refusal to admit the testimony of appellant's expert witness regarding the propriety of Dr. Cantu's treatment of the patient.

As noted, Dr. Cantu settled with the appellees prior to trial and was dismissed as a defendant in this case. In addition, the trial court granted, with prejudice, appellant's motion to dismiss its cross-claim against Dr. Cantu. This is a final order and judgment of the court which has not been appealed.

TEX.CIV.PRAC. & REM.CODE ANN. § 33.017, effective September 1, 1985, provides "All claims for contribution between named defendants must be determined in the primary suit...." The instant suit was filed before September 2, 1987, when § 33.017, *supra,* was *repealed.* Therefore, pursuant to § 33.017, *supra,* appellant lost its rights to determine any claim for contribution from Dr. Cantu in the instant suit because Dr. Cantu was not a named party. Consequently, the trial court properly excluded as irrelevant any evidence concern-

ing the negligence of Dr. Cantu and properly refused submission of special issues concerning the same.

Appellant's points of error three to eleven and point of error fourteen are overruled.

■ In point of error twelve appellant alleges that the trial court erred in allowing the testimony of an untimely designated expert witness, Dr. Janet Puckett, who was appellees' witness.

Prior to the trial court's February 22, 1988, witness designation deadline, Dr. Cantu designated Dr. Puckett as her expert witness. Dr. Puckett was not a treating physician. On March 15, 1988 (twenty-six days prior to trial), appellees, by pre-trial order, designated (among other things) Dr. Puckett as both a witness and as an expert witness. Appellant's counsel did not sign this order because of certain objections evidenced by his March 16, 1988, letter filed with the District Clerk. In appellant's letter containing its objections to the pre-trial order, there was no reference or complaint to appellees' designation of Dr. Puckett as either a witness or expert witness.

Thereafter, appellant noticed the deposition of Dr. Puckett for March 29, 1988. This deposition was taken by appellant's attorney and video taped by appellees' attorney. On April 4, 1988, the appellant's motion to dismiss its cross-action against Dr. Cantu was filed. At the April 7, 1988 hearing, the appellees' attorney pointed out to the court that Dr. Puckett was designated by the appellees as an expert witness in the pre-trial order while Dr. Cantu was still a party and that her deposition was taken two weeks prior to trial. The order granting appellant's motion to dismiss its cross-claim against Dr. Cantu was signed four days later, *on the date of trial.* The court further ordered that the "testimony of Dr. Jan Puckett will be permitted to be offered in the trial of this cause by video tape as leave of Court has been granted to Plaintiff's counsel to designate Dr. Jan Puckett as their expert witness in their Pre-trial Order filed March 9, 1988." The appellant complains because the appellees did not obtain leave to late designate Dr. Puckett

as an expert witness by supplement to appellees' interrogatories wherein the appellees had previously designated their expert witnesses.

The Texas Supreme Court in *Gee v. Liberty Mutual Fire Insurance Co.,* 765 S.W.2d 394 (Tex.1989) has recently restated an appeals court standard of review for this issue:

Heretofore, we have held that the failure of a party to supplement answers to interrogatories results in the automatic exclusion of testimony of an unidentified witness. *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 297–98 (Tex.1986). However, the testimony of the unidentified witness is admissible if the trial court finds that good cause exists for allowing the witness to testify. *Yeldell v. Holiday Hills Retirement & Nursing Ctr., Inc.,* 701 S.W.2d 243, 246 (Tex.1985). The burden of establishing good cause was and is on the party offering the evidence. *E.F. Hutton & Co. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987); *Gutierrez v. Dallas Indep. School Dist.,* 729 S.W.2d 691, 694 (Tex.1987).

Our goal in promulgating Rules 166b and 215(5) and our prior opinions interpreting these rules was to encourage full discovery of the issues and facts prior to trial so that parties could make realistic assessments of their respective positions. It was our hope that this would facilitate settlements and prevent trials by ambush. Both of our opinions in *Gutierrez* and *Youngblood* state the sanction announced in *Morrow.* However, neither of these cases mention the trial court's discretion in considering the good cause exception. Strict interpretation of the language in *Gutierrez* and *Youngblood* has caused application of the sanction to be mechanical, leaving no room for discretion. We therefore reaffirm our holding in *Morrow* and once again point out that the sanction of automatic exclusion of testimony of an undisclosed witness is subject to a good cause exception. If the trial court, in its discretion, finds that good cause exists to allow the evidence, such should be admitted.

In *Sharp v. Broadway Nat'l Bank*, 761 S.W.2d 141 (Tex.App.—San Antonio 1988, no writ), a case (not unlike the facts in the instant case), this Court held that the trial court implicitly found good cause when it permitted the testimony of witnesses in question, *citing Ramos v. Champlin Petroleum Co.*, 750 S.W.2d 873 (Tex.App.—Corpus Christi 1988, writ denied); *Davis v. Dowlen*, 136 S.W.2d 900, 904 (Tex.Civ.App.—Beaumont 1939, writ dism'd judgmt cor.). Furthermore, as this Court in the *Sharp* case, *supra*, said:

> While we are aware that it is no longer the burden of the questioning party to make a showing of surprise, we do not interpret this to mean that the trial judge no longer has the discretion to consider lack of surprise in finding good cause. 'The rules of discovery were changed to prevent trials by ambush and to ensure that fairness would prevail.' *West v. Solito*, 563 S.W.2d 240, 243 (Tex.1978); *Gutierrez, supra* at 693. We find no unfairness or ambush in allowing the testimony of a witness who was deposed and cross-examined by both parties a week before trial simply because the opposing party only received a 26 instead of a 30 day notice. The trial court properly exercised its discretion in allowing into evidence the deposition testimony . . .

761 S.W.2d at 146.

In this case, the appellant knew since March 15, 1988, that the appellees intended to call Dr. Puckett as both a witness and an expert witness. The record clearly reflects that the trial court was aware of the necessity of a finding of good cause before the testimony was to be admitted. It implicitly made a finding of good cause in permitting the testimony of Dr. Puckett.

Under the facts of our case and considering the totality of the record, we conclude that the trial court did not abuse its discretion in making a determination of good cause to allow the testimony of Dr. Puckett.

We overrule appellant's twelfth point of error.

In the thirteenth point of error appellant complains that the trial court erroneously precluded the testimony of juror Antonio Reyna at the hearing on the motion for new trial regarding juror Reyna's honesty in his answers on his jury information card. Appellant argues that the trial court should have granted appellant leave to file its supplement to the motion for new trial and admitted juror Reyna's refused testimony into evidence at the hearing thereon.

Our record reflects the following: Judgment was signed and entered on April 21, 1988; appellant's motion for new trial was filed on May 20, 1988, and was set for hearing on June 17, 1988. On the date of the hearing, appellant filed a supplement, without affidavit, to its motion for new trial. The trial court refused leave of court to file same and refused juror Reyna's testimony. We also note from the record that appellant asked no questions during voir dire of this juror.

The appellate time table began to run when the judgment was signed and entered on April 21, 1988. TEX.R.CIV.P. 329b(b) provides that an amended motion for new trial must be filed within thirty (30) days after the judgment or other order complained of is signed. Under TEX.R.CIV.P. 5, the court may not enlarge the period for taking any action under these rules relating to new trials except as stated in these rules. Under TEX.R.CIV.P. 62, which defines "amendment," the record clearly shows that the supplemental motion is an amended motion for new trial in that it pleads a new matter which constitutes an additional defense.

This Court held in *L.B. Foster Co. v. Glacier Energy, Inc.*, 714 S.W.2d 48 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) that an amended motion for new trial, filed more than 30 days after the default judgment was signed, was not timely, even though the original motion was timely filed, and thus the amended motion could not be considered by that trial court. *See Baker v. Wal-Mart Stores, Inc.*, 727 S.W.2d 53 (Tex.App.—Beaumont 1987, no writ); *Lind v. Gresham*, 672 S.W.2d 20

(Tex.App.—Houston [14th Dist.] 1984, no writ); *Lynd v. Wesley,* 705 S.W.2d 759 (Tex.App.—Houston [14th Dist.] 1986, no writ). In *Equinox Enter., Inc. v. Associated Media, Inc.,* 730 S.W.2d 872 (Tex.App.—Dallas 1987, no writ), the court held that an amended *or* supplemental motion for new trial filed without leave of court and more than 30 days after the appellate time table begins to run is a nullity and cannot be considered by the trial court.

Where appellant's supplemental motion for new trial was filed more than thirty days after the judgment was signed, we hold that the trial court did not abuse its discretion in refusing leave to hear evidence on the same. Appellant's thirteenth point of error is overruled.

In point of error fifteen, the appellant levels "no evidence" allegations regarding pecuniary loss and the findings by the jury of gross negligence and exemplary damages.

In addressing a "no evidence" point we consider only that evidence and inferences, which viewed in its most favorable light support the jury finding and disregard all evidence and inferences to the contrary. *Alm v. Aluminum Co. of America,* 717 S.W.2d 588, 593 (Tex.1986); *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). The finding is upheld if there is any evidence of probative force to support it. *In re King's Estate,* 150 Tex. 662, 665, 244 S.W.2d 660, 661 (1951).

### Pecuniary Loss

■ Appellant argues that there is no evidence as to the potential earnings of the deceased, his family earnings, expenses in his care and support, station in life, educational history and propensity, or propensity for parental contribution.

The evidence in this case does show that Jesus Manuel Rios was a healthy child at birth and had received regular medical checkups and vaccinations. The evidence further shows that there existed an extremely close affectionate relationship between the mother and the child, who was 19 months old at the time of his death.

The trial court took judicial notice of the United States Life Tables, wherein the mother's life expectancy is 57.2 years and the child's life expectancy was 69.2 to 70.1 years.

■ It appears from appellant's argument that expert testimony must be presented to establish pecuniary loss of a child of tender years as in this case. Such is not the law. As early as 1888 the Texas Supreme Court in the case of *Brunswig v. White,* 70 Tex. 504, 8 S.W. 85 (1888), stated:

... and when from the age or undeveloped state of the child any estimate of value of the services until majority would be matter of opinion, in which no particular or especial knowledge in way of expert testimony could be procured better than the judgment and common sense of the ordinary juror called to the duty of determining such value,—then, upon such testimony, the sound discretion of the jury can be relied on to determine the value, without any witness naming a sum.

8 S.W. at 89. This case has been quoted in *Green v. Hale,* 590 S.W.2d 231 (Tex.App.—Tyler 1979, no writ), and still remains the law. The same contention that the appellant presents here was decided adversely in *Landreth v. Reed,* 570 S.W.2d 486 (Tex.App.—Texarkana 1978, no writ). In that case the Texarkana Court stated:

... The Landreths contend that, as Kecia was only fourteen months of age at her death and there could be no evidence of any special skills or earning capacity on her part, the economic realities of today compel the conclusion that the cost of rearing the child would exceed any expected earnings or services, resulting in a net pecuniary loss to her parents. But such an argument overlooks the right of the parents to recover for reasonably expected contributions from their daughter after she reached the age of eighteen. The evidence showed that Kecia, although of tender age, was bright, active, and loving. The jury could infer from this and other evidence that in all reasonable probability the child would be of

considerable financial value to her parents in their advanced years or in the event of their disability or economic hardship.

570 S.W.2d at 491–92.

The Court went on further to state:

It is true that such deductions are based to some degree on speculation, but so is any award for future lost earnings, yet it is a universally recognized element of recovery in personal injury and wrongful death cases. To require more specific proof in a case of this type would, for all practical purposes, deny parents a right of recovery for the wrongful death of a very young child. We do not believe that to be the policy of our law.

570 S.W.2d at 492.

In our case, the jury was required and compelled by appropriate instructions by the trial court to see 57 years into the future and determine a just and fair amount to be awarded to Maria Eugenia Huerta, which it did. The evidence and case law discussed above resist attack upon both a no evidence and a factual insufficiency point of error on pecuniary loss.

### Gross Negligence and Exemplary Damages

■ Appellant further contends that there was no evidence to the gross negligence and exemplary damages issues. In his brief the appellant is trying to urge a "some care" test in ascertaining whether there is any evidence to support the jury's findings to gross negligence. The "some care" test was expressly rejected by the Supreme Court in *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 912 (Tex.1981).

In *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 912 (Tex.1981).

In *Burk Royalty Co. v. Walls, supra,* the Court there held:

In testing a jury finding of gross negligence, the same no evidence test should apply as to any other fact issue. The plaintiff has the burden to prove that the defendant was grossly negligent. If the jury finds gross negligence, the defendant has the burden of establishing that

there is *no evidence* to support the finding.... The jury, after all, does not have to believe evidence that "some care" was exercised. When there is *some* evidence of defendant's entire want of care and also *some* evidence of "some care" by the defendant, the jury finding of gross negligence through entire want of care resolves the issue, and the appellate court is bound by the finding in testing for legal insufficiency.

616 S.W.2d at 920–21.

The Court went on to state:

"In making this determination, all evidence must be considered in a light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in such party's favor." *Harbin v. Seale,* 461 S.W.2d 591, 592 (Tex.1970). *Accord: Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

616 S.W.2d at 922.

After reviewing the entire record, we find that there is some evidence to support the jury finding of gross negligence and exemplary damages.

The evidence shows that the treating physician's "standing orders" to appellant's MICU nurses in charge were to irrigate and suction the child's air tube every fifteen minutes, constant attention, placement of a thermal blanket to regulate the child's temperature, and notification of the doctor if "even questionable evidence of air hunger" occurs. Further our evidence shows that the Hospital "standing orders" contained in appellant's MICU policies and procedures mandate the nurses to notify the doctor in the event of any pulse greater than 140, respiration greater than 30, or temperature greater than 101.

The evidence in this case shows that both the physician's and Hospital's "standing orders" were not followed by appellant's nurses, which resulted in the death of the child, by suffocation. The evidence before the jury shows or infers that within ten minutes upon arrival at appellant's MICU Unit (from the appellant's recovery room) the child showed signs of air hunger when his vital signs dramatically changed and

the treating physician was not notified for an additional forty-five minutes; the child's air tube was not irrigated and suctioned every fifteen minutes; the child's air tube became plugged; the child did not receive constant attention; the assigned nurse was not in the child's room when the child went Bradycardiac; the thermal blanket had been removed from the child for some unknown reason; and the child's heart monitor alarm was not correctly set and then was turned off. The jury could reasonably infer from the evidence before it a gross lack of care in the face of impending harm.

■■■■ The appellant also argues that there is no proof of the head nurses being vice principals of the hospital. From *Texarkana Memorial Hosp., Inc. v. Firth*, 746 S.W.2d 494, 497 (Tex.App.—Texarkana 1988, no writ), it is clear that a hospital is responsible for the actions of a registered nurse in charge. As the Supreme Court stated in *Purvis v. Prattco, Inc.*, 595 S.W.2d 103 (Tex.1980), the vice principal relationship is established at a matter of law when it is shown that the employee was employed in a managerial capacity and was acting within the scope of his or her employment. Our evidence shows that it was the nursing supervisor, Mr. Palacios, who approved the transfer of Jesus Manuel Rios from the recovery room to the MICU instead of to the pediatrics ward. Furthermore, the Nursing Division Standards for the MICU Unit, which are contained in Plaintiff's Trial Exhibit 10, specifically delegate and delineate the authority and responsibilities of the nurses in charge of that unit. Both Nurse Rubio and Nurse Perez were Charge Nurses and their personnel records reflect that they were the specific personnel to whom the Hospital had given the management of the Hospital MICU Unit. The evidence also shows that the responsibility for suctioning is delegated by the Hospital to the nurse responsible for the care of the patient which the jury found was not done in this case. In any event, appellant has waived its claim that there was no finding by the jury that the charge nurses were vice principals for the hospital when appellant failed to object in accordance with TEX.R.CIV.P. 274, which

provides that, "Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX.R.APP.P. 52(a).

Appellant's point of error fifteen is overruled.

■■■■ Appellant's points of error sixteen through nineteen seek respectively, remittitur of the amount of the award given by the jury: for conscious physical pain and mental anguish suffered by Jesus Manuel Rios prior to his death; for the reasonable-necessary medical and Hospital expenses; for pecuniary loss; and for exemplary damages.

Appellant moved for the trial court to order a remittitur of each of the above awards as improper and excessive in its motion for remittitur and its motion for new trial, both of which were denied by the trial court.

The appellant has the burden of establishing that the jury's evaluation of damages was erroneous. *City of Austin v. Selter*, 415 S.W.2d 489 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.); *Green v. Hale*, *supra*. In reviewing excessive damages issues, the following governing principles should be considered:

1. That an appellate Court should not substitute its judgment for that of the jury;

2. That in the absence of an affirmative showing of bias or prejudice the Court of Civil Appeals will give every intendment to the evidence supporting the verdict;

3. That the judgment of the jury is as good as that of the Court and it should prevail unless it appears that the verdict is influenced by passion or prejudice and is not the result of honest convictions;

4. That the intangible elements of damage in a death case such as services, advice, counsel, nurture and care have value in addition to financial contributions and that the law has entrusted the duty of estimating

their value in terms of money to the jury.

City of Austin v. Selter, supra, at 502; Green v. Hale, supra; Detar Hosp., Inc. v. Estrada, 694 S.W.2d 359 (Tex.App.—Corpus Christi 1985, no writ).

In Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.1986), the Supreme Court stated the standard of review by appellate courts of factual insufficiency points when it held that courts of appeals, when reversing on insufficiency of the evidence grounds, should detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. Further, reviewing courts should state in what regard the contrary evidence (emphasis ours) greatly outweighs the evidence in support of the verdict.

In Pope v. Moore, 711 S.W.2d 622, 624 (Tex.1986), the Supreme Court stated the standard of review on excessiveness when it held that in determining whether damages are excessive, trial courts and courts of appeals should employ the same test as for any factual insufficiency question. The Supreme Court in Larson v. Cactus Utility Co., 730 S.W.2d 640 (Tex.1987) held that the proper standard of review for remittitur should be on an insufficiency of the evidence and not an abuse of discretion standard.

When reviewing an insufficient evidence point, we consider and weigh all the evidence; we set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986); Dyson v. Olin Corp., 692 S.W.2d 456, 457 (Tex.1985).

Regarding appellant's point of error sixteen we note that matters of pain and suffering are necessarily speculative and are not subject to precise mathematical calculations. It is particularly within the province of the jury to resolve these matters and determine amounts attributable thereto, each case must be measured by its own facts, and considerable latitude must necessarily be vested in the jury. Amoco Production Co., Inc. v. Thompson, 657 S.W.2d 824, 831 (Tex.App.—Corpus Christi, rev'd on other grounds, 662 S.W.2d 951 (Tex.1983).

The jury could reasonably infer from the evidence that the child, in essence, slowly suffocated to death. The jury awarded $700,000 for pain and suffering.

Appellant's argument that this award is excessive in relation to cited comparison cases does not address nor state clearly why the jury's finding in this case is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust or why it shocks the conscience or clearly demonstrates bias. Appellant's argument overlooks the fact that the natural father was awarded "zero." Further, it does not state in what regard the contrary evidence, greatly outweighs the evidence in support of the verdict as required in the Pool case.

The appellant has made no showing that the valuation of the jury was erroneous. TEX.R.APP.P. 81(b)(1). We find that the evidence is factually sufficient and overrule point of error sixteen.

In point of error seventeen appellant complains of the award by the jury for reasonable expenses of the necessary medical and hospital care received by Jesus Manual Rios. From the evidence in the record, we find that the appellees proved that the billing was reasonable, in keeping with the usual and customary charge for the same or similar services in Webb County, Texas, that they were necessary, that the amount was $18,926.55 and was directed to Maria Eugenia Rios. That is all that is required. City of Houston v. Celaya, 390 S.W.2d 542 (Tex.App.—Houston 1965, no writ); Bronwell v. Williams, 597 S.W.2d 542 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.). There were no objections by appellant to its admission nor was any limiting instruction requested under TEX. R.CIV.P. 273. We find that the jury could have reasonably inferred that the whole bill was incurred as a result of the occurrence

in question. Point of error seventeen is overruled.

In point of error eighteen, the appellant complains of the jury's award of $500,000 for the pecuniary loss resulting from the death of Jesus Manuel Rios. We find that the evidence is factually sufficient to support the jury's verdict. The appellees showed the life expectancy of the deceased child, the life expectancy of the mother, that Jesus was a healthy child, and that in view of the relationship between Jesus and his mother, the jury could reasonably infer that he would be of great financial assistance to her in her advanced years or in the event of her disability or economic hardship. We overrule appellant's point of error eighteen.

In regard to point of error nineteen, we find that the trial court was correct in denying appellant's motion for remittitur based upon the findings and award of $1,000,000 given by the jury for exemplary damages because (1) the evidence as addressed by us under point of error fifteen was factually sufficient to support the award, and (2) the ratio between actual damages and exemplary damages was reasonable.

It is well settled that exemplary damages must be reasonably proportioned to actual damages. *Texarkana Memorial Hospital, supra.* The determination of exemplary damages must depend upon the facts of each particular case and the factors to be considered in determining whether the award of exemplary damages is reasonable include: 1) nature of the wrong; 2) the character of the conduct involved; 3) the degree of culpability of the wrongdoer; 4) the situation and sensibilities of the parties concerned; and 5) the extent to which such conduct offends the public sense of justice and propriety. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981).

The court in *Texarkana Memorial Hosp., Inc. v. Firth, supra,* stated:

The injury in wrongful death, and the ratio between the exemplary damage and the actual damage is approximately one to one. The public rightfully expects the hospital to maintain safe conditions and to treat patients in accordance with their needs. In applying the five determining factors set forth above to the present case, we find the award of exemplary damages to be reasonable.

746 S.W.2d at 498.

The instant case shows that the exemplary damages of $1,000,000 are reasonably proportioned to the actual damages of approximately $2,300,000.

Appellant's point of error nineteen is overruled.

In point of error twenty appellant claims that the trial court erred in entering its order denying appellant's motions for remittitur and new trial as the findings and award given by the jury for appellant's heedless and reckless disregard for the rights of others is unconstitutional.

Appellant cites no authority to support its claims that punitive damages such as those in this case are unconstitutional. Accordingly, appellant's point of error twenty is overruled.

Appellant's point of error twenty-one claims that the trial court erred in denying appellant's motion for remittitur as the damages awarded by the jury were in excess of the statutory limit prescribed by TEX.REV.CIV.STAT.ANN. art. 4590i, §§ 11.02, 11.03, and 11.04. The Texas Supreme Court in *Lucas v. United States,* 757 S.W.2d 687 (Tex.1988) has held that the limitation on medical malpractice damages as set out in the above statute is unconstitutional. Accordingly, appellant's point of error twenty-one is overruled.

Appellant's point of error twenty-two claims that the trial court erred in entering its order denying appellant's motion for new trial as the cumulative effect of the trial court's errors discussed in points of error numbers one through twenty-one was reversible error in that appellant was prejudiced in the presentation of its case and injury occurred which affected the result in this case.

Pursuant to TEX.R.APP.P. 81(b)(1), the burden of establishing reversible error is on the complaining party. *Nix v. H.R. Management Co.,* 733 S.W.2d 573, 576

(Tex.App.—San Antonio 1987, writ ref'd n.r.e.), *citing Lorusso v. Members Mutual Ins. Co.,* 603 S.W.2d 818, 821 (Tex.1980). The complaining party must show that the trial was materially unfair. *Galvin v. Gulf Oil Corp.,* 759 S.W.2d 167 (Tex.App.—Dallas 1988, writ denied). The appellant has failed to show any error and particularly that the trial was materially unfair.

Accordingly, appellant's point of error twenty-two is overruled.

The judgment is affirmed.